### In re UNITED BUTTON CO.

(District Court, D. Delaware. January 5, 1906.)

#### No. 103.

1. BANKRUPTCY—UNLIQUIDATED DAMAGES—LIQUIDATION.

A claim for unliquidated damages resulting from injury to the property of another, not reduced to judgment and unaccompanied and unconnected with any contractual or quasi contractual liability, is not susceptible of liquidation under section 63b of the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]).

[Ed Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 479.]

2. SAME—PROCEDURE.

Under the power conferred on the court by Act July 1, 1898, c. 541, § 63b, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], to direct the manner in which unliquidated claims against a bankrupt may be liquidated, ample authority exists to adopt any procedure appropriate to the particular case, whether it be submission to a jury on an issue framed, or production of evidence before the referee, or some other method.

(Syllabus by the Court.)

In Bankruptcy.
See 137 Fed. 668.

William R. Sears and Robert Penington, for petitioners.
Benjamin Nields, for trustee.

BRADFORD, District Judge. Jacob F. Brown, Samuel G. Adams and Edmund F. Leland, trading as Brown & Adams, have presented a petition for liquidation of an alleged claim against the United Button Company, a corporation of Delaware, bankrupt. The application is made on the following facts. A petition in involuntary bankruptcy against the United Button Company was filed August 4, 1904, and the corporation was adjudicated a bankrupt August 10, 1904, and shortly thereafter the Security Trust and Safe Deposit Company, a corporation of Delaware, was appointed trustee. Brown & Adams filed a bill of complaint in the Superior Court of Massachusetts for Suffolk County, May 31, 1905, against the bankrupt and its trustee, in which it was alleged in substance, among other things,

that the complainants were buyers and dealers in wool and had in or subsequent to 1902 acquired by lease for a term of fifteen years and were in possession of a large building in Boston specially adapted to the storage of merchandise; that the complainants occupied it for the storage of large quantities of wool; that the building was constructed "in respect to thickness of walls, matter of construction and in other particulars, with special reference to keeping of wool or other merchandise at a cool and even temperature"; that the United Button Company had for several years prior to the fall of 1904 occupied as its manufactory and distributing centre a building adjoining that occupied by the complainants, there being a party wall between the two; that the trustee in bankruptcy had since its appointment carried on the business of the bankrupt at the above mentioned manufactory; that an even and cool temperature is required for the proper keeping of wool, and if the latter is subjected to artificial heat it becomes "unduly dried and loses in that way weight and natural moisture, and loses many of its other valuable qualities"; that in the conduct of its business the bankrupt and, later, the trustee, had generated and were then generating in the manufactory an "immense amount of heat, which said defendants have cast and are now casting through the party wall into the warehouse" of the complainants and upon the merchandise stored therein; that by reason of the excessive heat passing from the manufactory into the warehouse the wool stored therein was damaged to the amount of $10,000 per annum at least; that the complainants had endeavored ineffectually to protect themselves against the heat by inclosing at their own expense a section of the party wall in hollow fire-proof brick; that the complainants from time to time had made complaint to the defendants, but without result, of the heat which escaped from the manufactory into the warehouse; that finally "an arrangement was made with the defendant trust company" under which the complainants at their expense made certain changes and alterations in their warehouse for the purpose of stopping the further passage of heat, "upon the agreement that if, upon proceedings taken by the plaintiffs against the defendant, it should ultimately be found by the court that the defendants were liable for such heat, then the expense thereof should be paid to the plaintiffs by the defendants"; that such changes and alterations made by the complainants had proved insufficient to prevent the passage of the heat, and that it continued to pass into the warehouse to almost the same extent as before; that the defendants had full knowledge of the character of the warehouse and of the fact that the wool stored there was liable to be damaged by heat passing through from the manufactory; and that the passage of the heat from the factory into the works "causes a direct, sensible and visible injury to the property of the plaintiffs and to their rights therein, and that it constitutes a trespass thereon and a continuing nuisance upon the defendants' premises, causing great and irreparable damage to the plaintiffs' property and their rights therein." The bill prayed for a temporary and permanent injunction; that an account might be taken of the damage sustained or suffered by the complainants, including the expense of the changes

and alterations made by the complainants as above mentioned, and that the defendants might be decreed to pay to the complainants the amount found due. The bill nowhere alleges negligence against the defendants or either of them, but proceeds on the theory of the "wrongful" and "unlawful" conduct of business in the manufactory. The trustee in bankruptcy filed an answer July 17, 1905, to the above-mentioned bill. No decree has been made and the suit is still pending. Brown & Adams filed July 24, 1905, a proof of claim setting forth in substance that the United Button Company was indebted to them in the sum of $12,000 for injury caused to their wool by the wrongful acts and omissions of that company. The alleged claim not having been allowed, they filed August 8, 1905, the petition for liquidation now under consideration, in which it is averred in substance, among other things, that the United Button Company was at and before the filing of the petition in bankruptcy and still is indebted to Brown & Adams in the sum of $12,000 for "wilful and malicious injury" to their wool caused by the wrongful acts and omissions of that company, as set out in an exhibit annexed to the petition. This exhibit contains a copy of the bill filed by Brown & Adams in the Massachusetts suit. The prayer of the petition is in substance that the alleged claim of the petitioners may be liquidated in the Massachusetts suit or in such other manner as to this court may seem meet and proper, and thereafter may be finally proved and allowed against the estate of the bankrupt. A hearing was had on the petition November 2, 1905, at which time the petitioners asked and obtained leave, on filing a proper affidavit, to amend their petition by striking out the words "wilful and malicious" from the statement of the consideration of the alleged indebtedness. The requirement of an affidavit having been complied with, the proposed amendment was allowed. It is admitted that all of the property of the bankrupt in Massachusetts and elsewhere has been reduced to money by the trustee.

Section 63b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]) provides that "unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate." If it be assumed that the petitioners have a claim provable and, after liquidation, allowable against the·estate of the bankrupt, and that the lapse of time since the adjudication has not operated as a bar, it is at least doubtful whether such liquidation would be effected in the Massachusetts suit. This court, of course, is without power to control or regulate the pleadings or practice to be observed, or the kind or measure of relief to be accorded, in that suit. The bill there seeks an account of all damages sustained by the complainants through the alleged "wrongful acts of the defendants" and a decree compelling the latter to pay to the former "the amount so found due." These acts, it is· averred, were done by "the defendant The United Button Company and, later, the defendant Trust Company as its trustee"; and it is to be inferred from the bill that the acts complained of resulted in damage both before and after the filing of the petition in bankruptcy. Apparently it is the purpose of

the bill to secure a decree against both defendants for a lump sum of money representing the total amount of damage sustained by the complainants, without any apportionment of liability for that amount as between the bankrupt and the trustee. A demand for damages for a wrongful act done after the filing of the petition cannot in any aspect of the case constitute a provable debt or claim, and, if such demand be so united with one for damages accruing prior to such filing as to be. indistinguishable from the latter, liquidation of claim as contemplated by the bankruptcy act is defeated. These considerations, apart from others which might be mentioned, sufficiently disclose the impropriety of any order by this court for liquidation of the alleged claim in the suit pending in Massachusetts.

Under the power conferred on the court to direct the manner in which unliquidated claims against a bankrupt may be. ascertained in amount, ample authority, I have no doubt, exists to adopt any procedure appropriate to the particular case, whether it be submission to a jury on an issue framed, or production of evidence before the referee, or some other method. In section 58 of the bankruptcy act of 1800 (2 Stat. 35, c. 19), it was provided:

"That any creditor of a person, against whom a commission of bankruptcy shall have been sued forth, and who shall lay his claim before the commissioners appointed in pursuance of this act, may at the same time declare his unwillingness to submit the same to the judgment of the said commissioners, and his wish that a jury may be impanneled to decide thereon: And in like manner the assignee or assignees of such bankrupt may object to the consideration of any particular claim by the commissioners, and require that the same should be referred to a jury. In either case, such objection and request shall be entered on the books of the commissioners, and thereupon an issue shall be made up between the parties, and a jury shall be impanneled, as in other cases, to try the same in the circuit court for the district in which such bankrupt has usually resided."

It was further provided in the section that the verdict of the jury, if not set aside, "shall be certified to the commissioners, and shall ascertain the amount of any such claim." In section 7 of the bankruptcy act of 1841 (5 Stat. 446, c. 9), it was provided with respect to "proof of debts or other claims by creditors entitled to prove the same by this act":

"But all such proofs of debts and other claims shall be open to contestation in the proper court having jurisdiction over the proceedings in the particular case in bankruptcy; and as well the assignee as the creditor shall have a right to a trial by jury, upon an issue to be directed by such court, to ascertain the validity and amount of such debts or other claims; and the result therein, unless a new trial shall be granted, if in favor of the claims, shall be evidence of the validity and amount of such debts or other claims."

Congress in thus specifically providing in the bankruptcy acts of 1800 and 1841 for the submission to a jury, on an issue framed, of alleged debts and claims against the bankrupt, in order that their validity and amount might be. ascertained, recognized that the intervention of a jury for that purpose was an appropriate step in proceedings in bankruptcy. No such specific provision was contained in the bankruptcy act of 1867, nor is it to be found in the bankruptcy act of 1898. In section 19 of the act of 1867 (14 Stat. 526, c. 176), however, it was provided:

"If any bankrupt shall be liable for unliquidated damages arising out of any contract or promise, or on account of any goods or chattels wrongfully taken, converted, or withheld, the court may cause such damages to be assessed in such mode as it may deem best, and the sum so assessed may be proved against the estate."

And section 63b of the act of 1898, as before stated, provides that "unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate." A jury constitutes part of the machinery of a district court of the United States, and the ascertainment of the amount of unliquidated damages is, in general, a function appropriate to a jury. The power of the court under the act of 1867 to cause unliquidated damages for which the bankrupt was liable "to be assessed in such mode as it may deem best," and under the act of 1898 to "direct" the "manner" in which unliquidated claims against a bankrupt may "be liquidated," was and is broad enough to include authority to provide for their submission to a jury.

The counsel for the trustee contends that the alleged claim of Brown & Adams is not a provable debt or claim and, further, that, if heretofore provable, it is barred by section 57n, which, subject to a proviso not pertinent to this case, is as follows:

"Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication; or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the expiration of such time, then within sixty days after the rendition of such judgment." Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444].

Assuming for the present that the above limitation would not bar the alleged claim, if otherwise provable, and that the partial or imperfect proof filed July 24, 1905, might be supplemented by an amendment allowed after liquidation (Hutchinson v. Otis, 190 U. S. 552, 555, 23 Sup. Ct. 778, 42 L. Ed. 1179; Buckingham v. Estes, 128 Fed. 584, 63 C. C. A. 20), there remains the question whether the alleged claim is of a provable nature. Section 1 provides that the word "debt" shall include "any debt, demand, or claim provable in bankruptcy", and section 63a (30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]) contains an enumeration of debts, demands and claims made so provable, and provides that "debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded upon an open account, or upon a contract expressed or implied." Clearly the alleged claim would not be provable by virtue of section 63a, considered independently of the provisions of section 63b and section 17, unless and save in so far as it is founded upon "a contract expressed or implied." The claim, however, if any exists, is not based upon nor does it grow out of an expressed or implied contract. The only agreement or arrangement suggested was on the part of the trustee in bankruptcy, no breach of which could originate or support a claim against the bankrupt. On the facts as alleged no contract on the part of the bankrupt can be implied in fact, and no circumstances are disclosed giving rise to a contract implied in law or quasi-contract. It does not appear that the tort feasor obtained

or derived from the petitioners through the commission of the tort any property for the value or proceeds of which it could be held liable under any quasi-contractual obligation. It is not like the case of a wrongful conversion of personal property, where there is an election of remedies. The alleged claim is for damages for a tort pure and simple. No election between a remedy ex delicto and one ex contractu was or is possible. Keener on Quasi-Contracts, 159, 160. The doctrine of "waiver of tort" can have no application. Such being the case, it is material to inquire whether, wholly aside from section 17, the scope of section 63a is so enlarged, or its enumeration of provable demands so added to, by section 63b as to embrace the alleged claim. The provision for the liquidation, proof and allowance of unliquidated claims against a bankrupt, unless distorted in meaning by a forced and unnatural interpretation, is in all respects harmonious with section 63a. It is obvious that unliquidated claims against a bankrupt result in many instances from the breach of express or implied contracts, and, as such, are demands of a provable nature under the provisions of section 63a. Section 63b provides, as was necessary, for the liquidation of such unliquidated demands and for their proof and allowance after liquidation. There is no legitimate ground for an assumption that Congress intended by so providing for the liquidation, proof and allowance of "unliquidated claims" to add to the classes of provable demands mentioned in section 63a. Such an assumption would be not only uncalled for, but wholly inadmissible. For, unless the "unliquidated claims" of section 63b be restricted to those made provable by section 63a, there is no limitation upon the provability of unliquidated demands of whatsoever nature against a bankrupt. Such a result would be repugnant to the express enumeration contained in section 63a, and, further, would, as hereinafter appears, involve a wide departure from the settled policy of every system of bankruptcy heretofore in force in the United States. But all doubt upon the point, notwithstanding certain expressions of the court in Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, hereinafter referred to, has been dispelled by the highest authority. In Dunbar v. Dunbar, 190 U. S. 340, 349, 23 Sup. Ct. 757, 47 L. Ed. 1084, the court through Mr. Justice Peckham said:

"Section 63a provides for debts which may be proved, which, among others, are (1) 'a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest on such as were not then payable and did not bear interest;' (4) 'founded upon an open account, or upon a contract express or implied.' In section 63b provision is made for unliquidated claims against the bankrupt, which may be liquidated upon application to the court in such manner as it shall direct, and may thereafter be proved and allowed against his estate. This paragraph b, however, adds nothing to the class of debts which might be proved under paragraph a of the same section. Its purpose is to permit an unliquidated claim, coming within the provisions of section 63a, to be liquidated as the court shall direct."

The counsel for the petitioners lay much stress upon section 17 as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 [U. S.

Comp. St. Supp. 1905, 'p. 684], and contend that by virtue of that section, in connection with section 63, their alleged claim is provable in bankruptcy. Before taking up this contention it will be helpful to consider what would have been the status of the alleged claim had section 17 not been amended. That section in its original form was as follows:

"Sec. 17. Debts not Affected by a Discharge.—a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (1) are due as a tax levied by the United States, 'the State, county, district, or municipality in which he resides; (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another; (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

While it was the intention of Congress in enacting section 17 to determine and declare the effect of a discharge in bankruptcy upon demands against the bankrupt provable against his estate, it reasonably may be assumed, in the absence of pursuasive evidence to the contrary, that Congress did not intend in and by that section to render so provable demands not possessing that nature or quality under other provisions of the act. Section 1 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]) provides that "discharge" shall mean the release of a bankrupt from "all of his debts which are provable in bankruptcy, except such as are excepted by this act," and, further, as has been stated, that "debt" shall include "any debt, demand, or claim provable in bankruptcy." A discharge thus means, subject to qualification with respect to demands due or owing to the United States, the release of the bankrupt from all of the debts, demands and claims against him which are provable in bankruptcy except such of them as are by the act excepted. The exception necessarily relates to provable demands, and, to indulge in tautology, is equivalent to the phraseology, "except such provable debts, demands and claims against the bankrupt as are by the act excepted." It is doubtless true that the words "provable debts" in section 17 are there used in a sense broad enough to include, in the case of taxes, demands against a bankrupt which, although not strictly or technically "provable," are nevertheless allowable out. of his estate. It is an elementary proposition that a discharge in bankruptcy is no bar to the enforcement of demands against a bankrupt not provable under the act. To undertake to except such demands from the operation of a discharge is an absurdity. Hence it is argued that the inclusion of certain demands in the exception contained in section 17, while not in form, was in effect a legislative recognition of their provability; although not releasable by virtue of the discharge. of the bankrupt. This deduction is sound, but has been misapplied by counsel. Section 17 did not provide that there should be excepted from the operation of a discharge all taxes due from the bankrupt "levied by the United States, the State, county, district, or municipality in which he resides," or all "judgments in ac-

tions for frauds, or obtaining property by "false pretenses or false representations, or for willful and malicious injuries to the person or property of another," or all demands "created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." On the contrary it provided that a discharge should release the bankrupt from all his provable debts, "except such"—that is to say, such of the provable debts, demands or claims against him,—"as (1) are due as a tax levied" &c.; "(2) are judgments in actions for frauds", &c.; "or (4) were created by his fraud, embezzlement," &c. Only in so far as they were provable were claims "due as a tax levied by the United States" &c., "judgments in actions for frauds" &c., and demands "created by his fraud, embezzlement," &c., excepted from the operation of a discharge. It is a fallacious idea that a demand against a bankrupt was provable because it fell within the general description of demands mentioned in section 17, provable claims for which were excepted from the operation of a discharge. If, indeed, none of the demands included in any given description of debts or liabilities mentioned in section 17 were covered by the provisions of section 63a defining "provable debts," when read in the light of other provisions in the act, it might be urged with some color that by necessary implication Congress intended in and by section 17 so to extend provability as to cover all demands included in such given description. But such an hypothesis is without foundation. When section 63a is so read, it will be found that its provisions defining the classes of debts or claims made provable are broad enough to cover demands of a provable nature in each of the several classifications mentioned in section 17 prior to its amendment. The first classification relates to certain enumerated taxes due from the bankrupt. A tax is not strictly a debt. It lacks the nature of a debt in that, though for a sum certain, it is not founded upon any agreement or assent of the person or persons against whom it is assessed, but is a burden for public purposes imposed in invitum. As an obligation or duty created by statute to pay money, however, it is quasi-contractual, although there may be difficulty as to the remedy for its enforcement in a given case. Keener, in his work on Quasi-Contracts, p. 16, states that "a statutory obligation which does not rest upon the consent of the parties, is clearly quasi-contractual in its nature." This proposition is illustrated by the case of a statutory demand for half-pilotage for refusal to accept the services of a pilot. Steamship Co. v. Joliffe, 2 Wall. 450, 457, 17 L. Ed. 805. There has been much conflict in the decisions with respect to procedure for the collection of taxes, where no statutory mode has been prescribed, and also upon the point whether and under what circumstances, notwithstanding the existence of a statutory mode, the general principles of law will furnish an alternative or cumulative remedy by action. These matters of dispute, however interesting in themselves, are unimportant here. The procedure is supplied by the bankruptcy act. Section 64, which deals, among other things, with the priority of debts and demands against the estate of a bankrupt, provides in paragraph a for the payment by the trustee under the order of the court of "all

taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality in advance of the payment of dividends to creditors," and that "in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court." Thus the taxes enumerated in section 17, "legally due and owing by the bankrupt," by section 64 are directed to be paid out of the estate, by section 17 are recognized as "provable debts," and are demands of a quasi-contractual nature. While strict or technical "proof" of them is not required, although often presented, there can be no doubt that they are to be treated as provable debts or demands embraced in the class "founded upon an open account, or upon a contract express or implied." The second classification contained in section 17 prior to the amendatory act included "judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another." All these judgments, in so far as provable under the act, clearly were included by section 63a in the class of debts consisting of "a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition," &c. The third classification in section 17 has no relevancy to the point under discussion; but the fourth includes debts or claims against the bankrupt "created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." The fraud here mentioned is restricted to fraud on the part of the bankrupt while acting as an officer or in a fiduciary capacity, and the same statement, mutatis mutandis is applicable to embezzlement and misappropriation. Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147. The commission of such torts usually involves contractual or quasi-contractual liability on the part of the wrongdoer, and whenever such is the case the liability constitutes a "provable" debt or demand founded "upon a contract express or implied." The foregoing considerations render unnecessary any interpretation of section 17 in its original form, which would impute to Congress an intent in and by that section to establish the provability of demands against the estate of a bankrupt. Indeed, such interpretation would have produced repugnancy between that section and section 63, and have been calculated to embarrass the court in the administration of the act. Provability of debts or claims in bankruptcy was not in whole or in part created by the provisions of section 17 as it stood prior to the amendatory act, but was founded solely upon the provisions of section 63. Demands to be provable must have conformed to the requirements of the latter section. In Crawford v. Burke, supra, where section 17, before its amendment, was under consideration, the court through Mr. Justice Brown said, page 193, of 195 U. S., page 13, of 25 Sup. Ct. (49 L. Ed. 147).

"It certainly could not have been the intention of Congress to extend the operation of the discharge under section 17 to debts that were not provable under section 63a."

If all debts, dischargeable by proceedings in bankruptcy, were provable exclusively under section 63, it fairly may be inferred, in the

absence of any other provision defining the essentials or conditions of provability, that all provable debts, not so dischargeable, were also provable exclusively under the same section. Creation of provability is one thing. Its mere recognition is another. The latter, however, whether express or implied, may have an important bearing upon the question of provability by indicating that the language used in section 63a to define provable claims was employed in a broader sense than would, without such recognition, have been attributable to it. It is proper that the section should be read in connection with section 17, section 64 or any other section calculated to throw light upon its scope and effect. The result may be that, where the definition in section 63a of a class of provable debts is, in and by itself, susceptible of two interpretations, the more liberal will be adopted. The provision making demands founded upon implied contracts provable conceivably may have contemplated, on the one hand, only real or genuine contracts implied in fact, or, on the other, not only such true contracts, but also those fictitious contracts or quasi-contracts implied by the law in the absence of or against consent, for the purpose of effectuating substantial justice. Whether the narrow and literal, or the more comprehensive interpretation, should prevail was a question into the decision of which a consideration of other provisions than section 63 well may have entered. But prior to the amendment of section 17 certainly no inference legitimately could be drawn from that or any other section in the act that Congress intended to make provable any demands which the classes of provable claims as enumerated and defined in section 63a would not under a liberal construction embrace. These views are in accord with the doctrine of the Supreme Court as enunciated in Crawford v. Burke, supra. There it was held that a discharge in bankruptcy was a bar to an action of trover for the wilful and fraudulent conversion of shares of corporate stock. The court said pages 187, 193, of 195 U. S., pages 11, 13, of 25 Sup. Ct. (49 L. Ed. 147).

"We are clear that the debt of the plaintiff was embraced within the provision of paragraph a, as one 'founded upon an open account, or upon a contract, express or implied,' and might have been proved under section 63a had plaintiff chosen to waive the tort, and take his place with the other creditors of the estate. * * * We think that section 63a, defining provable debts, must be read in connection with section 17, limiting the operation of discharges, in which the provable character of claims for fraud in general is recognized, by excepting from a discharge claims for frauds which have been reduced to judgment, or which were committed by the bankrupt while acting as an officer, or in a fiduciary capacity. If no fraud could be made the basis of a provable debt, why were certain frauds excepted from the operation of a discharge? We are, therefore, of opinion that if a debt originates or is 'founded upon an open account or upon a contract, express or implied' it is provable against the bankrupt's estate, though the creditor may elect to bring his action in trover as for a fraudulent conversion, instead of in assumpsit for a balance due upon an open account. It certainly could not have been the intention of Congress to extend the operation of the discharge under section 17 to debts that were not provable under section 63a. It results from the construction we have given the latter section that all debts originating upon an open account or upon a contract, express or implied, are provable, though plaintiff elect to bring his action for fraud."

The foregoing considerations show that an open claim for un-liquidated damages for a tort, wholly unaccompanied and uncon-nected with any contractual or quasi-contractual liability, was not a provable demand under the act of 1898 prior to the amendment of February 5, 1903. This conclusion is supported by authority. In re Hirschman (D. C.) 104 Fed. 69; In re Filer (D. C.) 125 Fed. 261; Loveland on Bankruptcy, § 128. Nor was it provable in bankruptcy under the act of 1800, the act of 1841, or the act of 1867. Dusar v. Murgatroyd, Fed. Cas. No. 4,199; Doggett v. Emerson, Fed. Cas. No. 3,962; In re Hennocksburgh, Fed Cas. No. 6,367; In re Schuchardt, Fed. Cas. No. 12,483; Black v. McClelland, Fed. Cas. No. 1,462; Loveland on Bankruptcy, §.128. Unless by virtue of the amendment of section 17 it is not now provable. By that amend-ment the second clause of the section was so changed as to read as follows:

"(2) are liabilities for obtaining property by false pretenses or false rep-resentations, or for willful and malicious injuries to the person or property of another, or for alimony due or to become due, or for maintenance or sup-port of wife or child, or for seduction of an unmarried female, or for crim-inal conversation."

Here again, it is to be observed that the section as now in force provides, not that all "liabilities for obtaining property by false pretenses or false representations" &c. shall be excepted from the operation of a discharge, but substantially that such liabilities only in so far as they are "provable debts" shall be excepted. The con-tention that because "liabilities * * * for willful and malicious injuries to the * * * property of another" are mentioned in the excepting clause, all liabilities for injuries to the property of another are rendered provable is untenable. On the assumption that the limitation in that clause of liabilities for injuries to the property of another to such as are "willful and malicious" is wholly consistent with the provability of demands based upon liabilities for wrongful, but not wilful or malicious, injuries to such property, the question yet remains whether in a given case the liability is a provable debt, demand or claim. The term "liabilities" undoubtedly includes judg-ments as well as claims not reduced to judgment. It is not to be supposed that Congress intended that provable open demands for injuries to the property of another should be excepted from the operation of a discharge, but that judgments for such injuries should be barred. The provability, however, of a claim for such an injury, whether consisting of a judgment or of an open demand, must be determined by reference to the requirements of section 63a liberally but legitimately construed. This point is accentuated by the seeming disinclination of the Supreme Court, notwithstanding the amendatory act, to regard claims for arrears in alimony as provable, though not dischargeable, in bankruptcy. Wetmore v. Markoe, 196 U. S. 68, 77, 25 Sup. Ct. 172, 49 L. Ed. 390; Dunbar v. Dunbar, 190 U. S. 340, 353, 23 Sup. Ct. 757, 47 L. Ed. 1084. It is highly improbable that Congress intended, by the mere substitution in section 17 of "lia-bilities" for "judgments in actions," to render or recognize as prov-able all claims for torts, unliquidated as well as liquidated. I am not

aware that section 17 has been so construed in any judicial decision. Such an intent on the part of Congress would have been a clear departure from the settled policy of the whole body of bankruptcy legislation in the United States, beginning with the act of 1800 and ending with that of 1898. It also would have produced glaring repugnancy between section 17 and the limitation by section 63a of provability to the classes of debts there enumerated. Injuries to "the person or property of another," it must be conceded, when taken in a broad, unqualified sense, would embrace all torts; and if "liabilities" for them were not restricted to such as are provable by virtue of section 63a, the limitation there found largely, if not wholly, would be nullified. Were all torts provable, as well, as claims founded upon "a contract express or implied," and fixed liabilities, "as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition" &c., it would seem to have been more appropriate had section 63a been framed in conformity with the radically different theory that "taxable costs incurred in good faith by a creditor" &c., and "costs taxable against an involuntary bankrupt" &c., and all other debts, demands and claims against the bankrupt, existing at the time of filing the petition, should be provable against and allowable out of his estate. No construction of section 17 resulting in such repugnancy should be adopted, if it can be avoided without doing violence to the language of the act. In Lamp Chimney Co. v. Brass & Copper Co., 91 U. S. 656, 663, 23 L. Ed. 336, where certain provisions of the bankruptcy act of 1867 were under consideration, the court through Mr. Justice Clifford used the following language:

"Words and phrases are often found in different provisions of the same statute, which, if taken literally, without any qualification, would be inconsistent, and sometimes repugnant, when, by a reasonable interpretation,—as by qualifying both, or by restricting one and giving to the other, a liberal construction,—all become harmonious, and the whole difficulty disappears; and in such a case the rule is, that repugnancy should, if practicable, be avoided, and that, if the natural import of the words contained in the respective provisions tends to establish such a result, the case is one where a resort may be had to construction for the purpose of reconciling the inconsistency, unless it appears that the difficulty cannot be overcome without doing violence to the language of the law-maker."

But there is nothing in section 17 requiring the application of the above-mentioned rule of construction to secure harmony between that section and section 63a. It contains no ambiguous or doubtful words or phrases, nor do its provisions, when naturally and fairly read, clash in any particular with those of the other section. Each may have its appropriate and full operation without interfering with the other. While section 17 limits the exception from the operation of a discharge to such of the demands or liabilities it mentions as are "provable debts," section 63a limits provability to the classes of demands or liabilities therein defined. Section 17, since the amendment, no more countenances the idea of the provability of a demand or liability, not provable under and by virtue of section 63a, than it did before its amendment. If a tort injuriously affecting the person or property of another is of such nature or is committed under such cir-

cumstances as to involve breach of contract, express or implied in fact, there is contractual liability provable under section 63a. And the same is true of a tort giving rise to a quasi-contractual liability for injury to property. In re Hirschman (D. C.) 104 Fed. 69; In re Filer (D. C.) 125 Fed. 261; Loveland on Bankruptcy, §§ 119, 128. The provability of such liability was expressly recognized in section 19 of the act of 1867, which provided that "all demands against the bankrupt for or on account of any goods or chattels wrongfully taken, converted, or withheld by him may be proved and allowed as debts to the amount of the value of the property so taken or withheld, with interest." This express recognition or declaration probably was necessary by reason of the fact that the act of 1867 contained no such comprehensive provision touching provability as that found in section 63a relating to claims founded upon a contract express or implied. So, a judgment recovered against a bankrupt, prior to the filing of the petition, for a tort wholly unrelated to contractual or quasi-contractual obligation, is provable as "a fixed liability, as evidenced by a judgment" &c. Such judgments were provable as debts under former bankruptcy acts; no distinction with respect to provability being made between judgments for causes of action ex contractu and those for causes of action ex delicto. In re Comstock, Fed. Cas. No. 3,073; In re Book, Fed. Cas. No. 1,637; In re Hennocksburgh, Fed. Cas. No. 6,367. So, notwithstanding the fact that Congress in amending section 17 struck out "judgments in actions for frauds" and did not supply their place with "liabilities" for frauds, there can be no doubt that a fraudulent conversion of bonds or other personal property by one, subsequently becoming a bankrupt, although not "acting as an officer or in any fiduciary capacity," would under section 63a be provable against his estate as a quasi-contractual liability. So judgments for provable debts, demands or claims, recovered "after the filing of the petition and before the consideration of the bankrupt's application for a discharge" &c., are provable. But I know of no principle or authority which would justify the court in holding provable a claim for unliquidated damages resulting from injury to the property of another, not reduced to judgment and unaccompanied and unconnected with any contractual or quasi-contractual liability. The alleged claim of the petitioners is of this description and, not being of a provable nature, is not susceptible of liquidation under section 63b. The petition, therefore, must be dismissed with costs.