JOSEPH HALLAGAN et al., Executors, Appellees, v. SIMEON A. DOWELL, Appellant.

**BANKRUPTCY:** Nonprovable Debts—Judgments Silent as to Nature
1　of Action on Which Based—Burden of Proof. A judgment creditor, in an action on a judgment antedating a discharge in bankruptcy of the judgment defendant, must, when the judgment

does not reveal the nature of the action on which it is based, show affirmatively, by a preponderance of the evidence and by the record behind the judgment, that said unrevealed cause of action was of such a nature that the judgment rendered thereon was nondischargeable under the Bankruptcy Act. Evidence consisting, *inter alia*, of the pleadings and instructions back of a foreign judgment reviewed, and held to be, at the best, in equipoise on the question whether a judgment was or was not based: (a) On "willful and malicious injury to * * * property;" or (b) On "fraud, * * * misappropriation, or defalcation while acting * * * in a fiduciary capacity;" and that the principle must prevail that a discharge in bankruptcy is, *prima facie*, a discharge of *all* then existing debts.

**APPEAL AND ERROR:** Facts, Findings and Verdict—Conclusiveness on Appeal—Nonapplication of Rule. The rule of conclusiveness attending findings of fact by the trial court in a law action has no application when the matter before such court is, in effect, a law question.

*Appeal from Taylor District Court.*—H. K. EVANS, Judge.

MONDAY, JANUARY 22, 1917.

IN his lifetime, Patrick Hallagan obtained a judgment against defendant Dowell in a court of the state of Indiana. He brought action in this state upon that judgment. So far as we are concerned with it, defendant pleaded that, since the rendition of the judgment, he had been discharged in bankruptcy, and thus freed from liability under the alleged judgment. In reply, plaintiff alleged that the judgment sued on was within stated exceptions made in the Bankruptcy Act, and therefore not dischargeable in bankruptcy. The trial court awarded a recovery upon the foreign judgment, and defendant appeals.—*Reversed.*

*W. C. Van Houten* and *Frank Wisdom*, for appellant.
*William M. Jackson*, for appellees.

1. BANKRUPTCY: nonprovable debts: judgments silent as to nature of action on which based: burden of proof.

SALINGER, J.—I. The Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. at Large 544 [U. S. Comp. St. 1901, page 3418], as amended by Act February 5, 1903, c. 487, 32

Stat. 797 [U. S. Comp. St. Supp. 1911, p. 1493]), excepts
from the operation of the discharge, *inter alia,* cases where
the liability is created by "willful and malicious injury to
the  *  *  *  property of another" or "fraud  *  *  *
misappropriation or defalcation while acting  *  *  *  in
any fiduciary capacity." Appellee asserts that his judg-
ment, against which a discharge is set up, is within both
exceptions; appellant, that it is within neither. Manifestly,
we cannot reach the question presented by this dispute un-
til we have proof that the judgment sued on rests on a
willful and malicious injury or breach of duty in
a fiduciary capacity, within the meaning of the ex-
ceptions in the act. The judgment sued on is silent
concerning what it rests upon. But it is permitted
to go behind the judgment, and ascertain from the plead-
ings and the record the basis of the judgment (*Bever v.
Swecker,* 138 Iowa 721) ; to ascertain what induced the for-
mal award for one party against the other (*State v. Beck,*
[Ind.] 93 N. E. 664; *In re Rhutassel,* 96 Fed. 597; *Hargadine-
McKittrick D. G. Co. v. Hudson,* 111 Fed. 361; Collier, Bank-
ruptcy [7th Ed.], page 319; *Tuska v. O'Brien,* 68 N. Y. 446;
*Dutton v. Woodman,* 9 Cush. [Mass.] 255; *Eastman v.
Cooper,* 15 Pick. [Mass.] 276; *Foye v. Patch,* 132 Mass.
105). These point out how required proof may be made.

It is equally well settled on whom is the burden of the
proof. We shall say no more at this point than that such
burden was on plaintiff appellee; that it was for him to
show by a preponderance of the evidence that the judg-
ment upon which he sues was not affected by the discharge
in bankruptcy because the liability upon which his judg-
ment is bottomed is within said exceptions. The discharge
is, *prima facie,* a release from all debts. But the creditor
may show, notwithstanding, and has the *onus* upon this,
that his debt is one within the excepted class. If he fails
to make such proof, his debt will be taken to be one of

the ordinary character. *Sherwood v. Mitchell*, 4 Denio (N. Y.) 435. He must show that the claim sued on is not within the terms of the bankruptcy discharge. *Van Norman v. Young*, (Ill.) 81 N. E. 1060. The burden rests upon the party attacking a discharge in bankruptcy to show some cause why it is not effectual. *Stevens v. King*, 16 App. Div. 377; *In re Peterson's Estate*, 118 N. Y. S. 1077. The plaintiff has the burden of showing by sufficient evidence that his claim was one of those excepted from the effect of the discharge. *Larsen v. Hyman*, 126 N. Y. S. 100; *Broadway Trust Co. v. Manheim*, 95 N. Y. S. 93; 3 Remington, Bankruptcy (2d Ed.), Sec. 2685; Black, Bankruptcy, Sec. 716; *Alling v. Straka*, 118 Ill. App. 184; and see Collier, Bankruptcy (7th Ed.), page 329.

As seen, neither party gets anything from the face of the judgment, and both must found their claims upon the record behind the judgment.

The appellee asserts that, by the record, the judgment sued on finds, *of necessity*, that defendant was liable because of willful and malicious injury, or fraud, misappropriations or defalcation, while acting in a fiduciary capacity. The position of appellant is that, if it be conceded that the judgment might rest upon such a finding, it could as well rest upon something which is not within the exception of the Bankruptcy Act; that it appears affirmatively that it does rest upon something other than that; and, at worst, that the evidence does not sustain the claim which appellee makes for the judgment any more strongly than it does the claim of the appellant.

II. The plaintiff Hallagan sold to one Tanner a large number of cattle, and took back mortgages for the purchase money. It is admitted in the present suit that the cattle were thus mortgaged; that the mortgage was recorded and the notes remain unpaid. The mortgagor sold the cattle to one Eldridge, who was not made a defendant in the In-

diana suit, and he and one Brown shipped the cattle and sold them to Helm and Lewis. Some of the proceeds of the sales reached the defendant Dowell, and he credited it on a note which he held against the mortgagor Tanner. All the persons named were concerned in taking, shipping and selling the two loads shipped to Indianapolis, out of which Dowell received money which he applied on the Tanner note. In the Indiana court, causes of action were joined against all said named persons and others, and both joint and several liabilities were charged. For the claim that the judgment sued on is founded upon a liability of Dowell as garnishee, and not upon willful and malicious injury to the property of plaintiff, or fraud, misappropriation or defalcation while acting in a fiduciary capacity, the defendant appellant argues as follows:

(a) There were at least four causes of action presented: (1) to recover the value of certain cattle; (2) to recover the proceeds of the sale of the same cattle; (3) an attachment and garnishment for money due from the defendants jointly, on account of receipts by them of money paid for the cattle and sold and converted, such money being received by defendants, they knowing of such unlawful conversion; (4) that Dowell and the others should as garnishees be held indebted to the Sanson Company.

(b) The principal suit impleaded Tanner, the mortgagor, Brown, Helm, Lewis, Murray, Thayer, Burns, the Sanson Company and the present defendant Dowell. The jury returned a verdict in favor of all these defendants other than the Sanson Company and Dowell. Of necessity, the judgment entered cannot affect others than the Sanson Company and Dowell. The company, through its agents, received most of the cattle. Tanner, whom the jury acquitted, sold the mortgaged property. Brown, who is exonerated, sold the two carloads the proceeds of which Dowell received. Helm and Lewis, to whom those two car-

loads were sold, and all the other defendants acquitted, were more or less concerned in the taking and selling of the cattle. For this it is claimed, and it certainly has much more force, that the acquittance of these other defendants is, in effect, a finding that no wrongful conversion took place; wherefore Dowell could not have been a party thereto and, therefore, could not have been found guilty of any wrongful and malicious injury to the property of plain tiff, or of fraud, defalcation or misappropriation.

(c) The Indiana court charged the jury plaintiff believed that Dowell and others were indebted to the Sanson Company; that he had filed an undertaking in attachment and the defendants therein had filed a general denial, and, since, plaintiff has dismissed its complaint, attachment and garnishment as to the two Murrays, Braskett and Halstead. This being so, no garnishees were left except Dowell and Burns, and whatever finding there is against any garnishees must, of necessity, refer to these two, and no one else. The court further charged that Burns and Dowell had made notes to the Sanson Company; that, if these notes were in good faith assigned before the date of the garnishment, the plaintiff could not recover against the garnishees; but if not made in good faith, and in bad faith to avoid proceedings in garnishment, then "upon the issue of garnishment you may find for the plaintiff for such an amount as may have been conveyed by such indebtedness of the said Burns and Dowell, provided you find in favor of the plaintiff and against said defendant company." The jury did find in favor of plaintiff and against Dowell in the principal suit. The jury further found expressly "for the plaintiff against the Sanson Commission Company on the attachment and garnishee proceedings herein." This, says appellant, was a finding that Dowell was indebted to that company, and that the garnishment against him was tenable.

(d) It is undisputed that Dowell received $1,061.26

from Brown. Yet the judgment entered was for $1,000. From which it is argued that the smaller sum might be all that Dowell owed the Sanson Company; wherefore the judgment may well rest upon the garnishment proceedings. On the other hand, it should not be claimed that, if the jury had found against Dowell on the issue in tort, it would have allowed less than the amount which Dowell confessed to having received through the tort, if one was committed. This is emphasized by the fact that no judgment went against Burns, as to whom the garnishment proceedings were not dismissed, nor was he within the judgment in the principal suit, although he had at least as much connection with the alleged tort as did Dowell. Upon all this it is argued that the charge of the court clearly authorized the jury to find against either Dowell or Burns if they found that either was indebted to the company, or that their notes to the company had been transferred in bad faith, if, in addition, there was judgment for plaintiff and against the company, in the principal suit.

On the other hand is:

(a) Defendant himself in a sense has construed the judgment not to rest upon garnishment, because in the bankruptcy proceeding he listed the same as "for money had and received,"—something which would be quite worthy of serious consideration were it an admission of fact instead of an opinion as to what is scientific classification in law of causes of action.

(b) The jury in the Indiana court was charged that, if it found from the evidence (1) that the mortgagor sold cattle mortgaged to Hallagan, (2) and the proceeds thereof were received and applied by defendant Dowell upon an antecedent debt due from Tanner, in good faith, without knowledge as to where the money came from, and without knowledge that the money was proceeds of the property mortgaged to plaintiff, (3) and without knowledge by or

assistance of Dowell of any fraud or wrong being committed by Tanner, or anyone, upon plaintiff's rights, the plaintiff must pursue the property, and not the proceeds thereof in the hands of Dowell.   (4) If from all the evidence it is found that Dowell, without any knowledge of the facts before stated, and without any knowledge as to where the money came from, received in good faith money paid to him in payment of an antecedent debt due to him from Tanner, then Dowell would not be liable for the money so paid him. (5) That the burden is on Dowell to show lack of knowledge, to show the existence of the claimed antecedent indebtedness, and his good faith.

Had it been the instruction that plaintiff could not recover if defendant proved good faith, a judgment against defendant would, of necessity, be a finding that he was found against because of his bad faith.   But the instruction does not say that proving good faith defeats recovery, but that failure of Dowell to prove good faith *and* other things enumerated will warrant recovery against him.  Unless he satisfied the jury on *all* the points enumerated, verdict against him was authorized.   If the jury found that Dowell had not negatived knowing that the cattle sold were mortgaged to Hallagan, or that he did not prove he had an antecedent debt due from Tanner, either finding would sustain the verdict under the charge given, which the jury was bound to follow, whether right or wrong; in other words, the jury could, under the instructions, find against Dowell if it found some things were not disproven which, though proven, would constitute neither fraud, willful injury to property or breach of duty imposed by fiduciary relation. It would follow that the verdict does not necessarily establish any cause of action which is within the exceptions of the Bankruptcy Act; that the most that may be said is that the verdict *may* rest upon a liability within these exceptions, or upon one which is not.   Where a jury is told

that a failure of a party to prove any of several enumerated things requires a verdict against him, such verdict may mean he has failed to prove all, and as well mean that he has merely failed to prove some one.

The verdict does not exclude that Dowell was held because he failed to show that the cattle were not mortgaged, or to prove he had no knowledge of the mortgage. Under the instructions, verdict could go against him, though the sale may have been with the consent of Hallagan, or the debt to Hallagan otherwise settled, or though Hallagan elected not to pursue his cattle, but to waive the tort and to sue in contract. It may be said further that under the charge a verdict was authorized because Dowell received payment of a debt due from Tanner, and knew the payment was from the proceeds of cattle taken and sold, and yet such verdict would establish nothing which bars discharge, unless it were further found that Dowell in some way assisted, advised or connived in the wrongful disposition of the cattle.

Under Instruction 9, a verdict could be sustained upon merely finding that defendants wrongfully intermixed the plaintiff's cattle with others and shipped the mixture to some of the defendants, and thereby the proceeds of the sale were finally received by defendant Dowell. As the evidence makes perfectly plain that Tanner had other cattle than Hallagan's, a large number having been bought of and mortgaged to one Harris, and to others, we have another reason why the verdict may rest on what is neither fraud nor willful injury to property. In this connection, it should further be noted that there is an affirmative reason why the element of bad faith may not necessarily have been determinative of the verdict, even if it be assumed that bad faith puts the judgment within said exceptions. In Instruction 19, the Indiana court charged that:

"If plaintiff has been deprived of his property by the

act of others assuming unauthorized and wrongful domin-
ion over it, the question whether such person acted in good
faith in assuming such dominion is not an essential ele-
ment of this verdict.   The question of good faith is not in-
volved."

This instruction seems to declare the common-law rule
in trover that it would lie against defendant, "no matter
how innocent his motives." *Burnham v. Pidcock,* 66 N. Y. S.
806, affirmed 58 Appellate Division 273.

Paraphrased, this means that, under the charge of the
court, the verdict returned could be sustained although
Dowell did nothing which puts this judgment within the
exceptions of the Bankruptcy Act.

True it is that neither the verdict nor judgment pur-
port to be against Dowell as garnishee.   Also true that the
question of his liability as garnishee was not referred to
in terms either in the verdict or judgment.   But both sides
agree that the judgment is not only silent as to this, but
on the face of it just as silent as to matters which are es-
sential to a recovery on part of plaintiff.   This silence
can have no effect other than to remit whosoever needs to
make it to an examination of the record behind the judg-
ment.   This affords no help to plaintiff though we as-
sume that the defendant has made out a weak showing
for his theory of what the judgment concludes.   For it
never avails the party who has the burden of proof that his
adversary has made a weak defense.   *Farmers & Merch. St.
Bank v. Shaffer,* 172 Iowa 173.   Neither does it establish
the case of the plaintiff if the testimony on what the record
behind the judgment shows is in equipoise.   As has been
seen, the burden is on the plaintiff to show affirmatively,
and by a preponderance, that his judgment is within the
exceptions of the Bankruptcy Act.   In a sense, the estab-
lishing of the discharge make a prima-facie case against the
plaintiff.   It is then for him to show why the discharge

shall not defeat his claim. The bankrupt is not required to show that the claim sued on was provable in the bankruptcy proceedings, nor that the debt is not within any of the classes excepted from the operation of the Bankruptcy Law. *Bailey v. Gleason,* (Vt.) 56 Atl. 537. The discharge establishes a prima-facie case, and the burden is on claimants to show that their claims were within one or more of the exceptions named in the statute, and were not affected by the discharge. *Gatliff v. Mackey,* (Ky.) 104 S. W. 379. Where the verdict is general and the issues many, or if the demand is so united with one for damages as to be indistinguishable, or at least inseparable, from a demand which is provable in bankruptcy, the general verdict does not establish that the case is within the exceptions. *Cooke v. Plaisted,* (Mass.) 62 N. E. 1054; *In re United Button Co.,* 140 Fed. 495. And on such an investigation as this, involving the record and the pleadings, the construction most favorable to the bankrupt is to be indulged. *In re Grout,* (Vt.) 92 Atl. 646.

We think the most plaintiff may claim is that, upon what the silent judgment has for basis, the evidence is balanced. This being so, the plaintiff, having the burden of proof, must fail. We find he has not shown by a preponderance that the liability upon which his judgment was entered is within the exceptions of the Bankruptcy Statute.

There being a failure to establish that the judgment sued on is founded upon acts *ex delicto,* we have, of course, no occasion to, and should not, determine what acts *ex delicto* come or do not come within said exception. Before we may say that finding certain acts finds such injury, breach of duty, or both, as put the case within the exception, the one who has the burden must first show by a preponderance that his judgment does rest upon either such injury to property, breach of duty, or both.

We do not overlook that this is an action triable on the law side, and that the trial court found for the plaintiff. The difficulty with applying the rules that usually govern us in such case is that the trial court rests its finding of fact upon a construction of the record behind the Indiana judgment. To such a situation, the reasoning of the rule of appellate review can have no application; for the trial court, in investigating such a question of fact, is, in effect, determining a law question, and has no opportunities or aids superior to our own.

2. APPEAL AND ERROR: facts, findings and verdict: conclusiveness on appeal: non-application of rule.

As the testimony at best for the plaintiff is equally balanced, it follows that the judgment below must be reversed.—*Reversed*.

GAYNOR, C. J., DEEMER, LADD, WEAVER and PRESTON, JJ., concur.