[Civ. No. 690.   Fifth Dist.   Jan. 20, 1967.]

TINLEY J. ROBINSON, Plaintiff and Appellant, v. LOUIS EARLY, Defendant and Respondent.

Cardozo, Trimbur & Nickerson and Gary S. Davis for Plaintiff and Appellant.

E. Paul Fulfer for Defendant and Respondent.

GARGANO, J.—Plaintiff appeals from an order of the superior court in which the court quashed a levy and execution on defendant's automobile on the ground that plaintiff's claim against the defendant had been discharged in bankruptcy. The facts are as follows:

Defendant, a licensed chiropractor, treated plaintiff on September 20, 1963, for a condition known as hemorrhoids. Thereafter, on September 18, 1964, plaintiff filed an action in the Superior Court of Stanislaus County for damages, allegedly sustained from this treatment. The complaint alleged three causes of action. In the first cause of action the plaintiff alleged negligence in the care and treatment of his condition. In the second cause of action he alleged that defendant "surgically treated" his condition without his knowledge and consent. The third cause of action charged defendant with practicing medicine without a license. The complaint was served on defendant on September 28, 1964,

and defendant failed to answer or appear. On February 18, 1965, appellant obtained a judgment by default in the sum of $6,675. The judgment contains no findings and there is nothing in the record to indicate on which of the three causes of action the judgment was entered. On September 7, 1965, defendant filed a petition in bankruptcy in the United States District Court, and listed plaintiff as a judgment creditor. Thereafter, defendant was adjudicated a bankrupt and discharged of all of his dischargeable debts. On February 28, 1966, plaintiff secured a writ of execution, and on April 12, 1966, levied on defendant's automobile. Defendant moved to quash the writ and levy, and the motion was granted. This appeal followed.

Defendant does not deny that under Code of Civil Procedure section 963.2 an order dissolving an attachment is appealable. (*Mudge* v. *Steinhart,* 78 Cal. 34 [20 P. 147, 12 Am.St.Rep. 17] ; *Risdon etc. Works* v. *Citizens' etc. Co.,* 122 Cal. 94 [54 P. 529, 68 Am.St.Rep. 25] ; *Steinberg* v. *Jacobs,* 21 Cal.App. 765 [132 P. 1060].) He contends, however, that plaintiff has appealed from a non-appealable order because both the notice of appeal and plaintiff's brief denominate the appeal as an ''appeal from the decision.'' Admittedly, plaintiff's notice of appeal reads :

''PLEASE TAKE NOTICE that plaintiff hereby appeals to the District Court of Appeals, Fifth Appellate District, from the decision of the Superior Court of the State of California, in and for the County of Stanislaus, wherein the Writ of Execution of the plaintiff was ordered to be quashed . . .''

We will quickly dispose of this point. In the instant case, the court filed a memorandum of decision and a formal order quashing plaintiff's writ of execution on the same day. It is evident that in referring to the decision ''wherein the writ of execution of the plaintiff was ordered to be quashed'' the plaintiff was not only referring to the court's memorandum but to the formal order as well. Defendant relies on *Estate of Russ,* 231 Cal.App.2d 917 [42 Cal.Rptr. 471], in support of his position. That case, however, is clearly distinguishable. There the appeal was from the ''Memorandum of Opinion'' which had been entered as a judgment and was filed without a minute order of any kind. Thus, in the instant case respondent is merely quarreling with semantics.

We will now direct our attention to the merits of appellant's appeal. The default judgment is in general terms and does not disclose the precise basis of defendant's liability.

Consequently, we must resort to the record for this determination. In this connection, plaintiff's complaint, which is part of the record, states three separate causes of action with each cause of action seeking to impose liability on the defendant on a different theory. The first cause of action seeks to recover for negligence in the treatment; the second for an intentional tort; and the third for a wrongful act in the performance of medical treatment without the necessary medical license. The defendant defaulted and the legal effect of his default was to confess the truth of all of the allegations in each cause of action. (*Hunt* v. *City of San Francisco*, 11 Cal. 250; *Fallon & Co.* v. *United States Overseas Airlines, Inc.*, 194 Cal.App.2d 546 [15 Cal.Rptr. 354]; *Fitzgerald* v. *Herzer*, 78 Cal.App.2d 127 [177 P.2d 364].) Thus, plaintiff contends that his judgment includes liability for a battery under the second cause of action which is not dischargeable in bankruptcy.

It is conceded, that under section 17(2) of the Bankruptcy Act (11 U.S.C.A. § 35), the liability arising from a malicious injury to the person of another is not dischargeable in bankruptcy.[1] It is also conceded that a surgical operation performed without the patient's knowledge or consent is a battery. (*Figlietti* v. *Frick*, 203 Cal. 246 [263 P. 534]; *Estrada* v. *Orwitz*, 75 Cal.App.2d 54 [170 P.2d 43].)[2] However, assuming arguendo that defendant's liability is predicated on such a battery as plaintiff contends, the question is whether this battery is wilful and malicious per se, within the meaning of section 17(2) of the Bankruptcy Act. In other words, although surgical treatment performed without the patient's consent is a battery in the "technical" sense, it is not necessarily malicious within the popular usage of the term, and the authorities are in conflict as to whether an injury resulting therefrom is per se malicious under the Bankruptcy Act.

The great weight of authority is that any assault and battery is a wilful and malicious injury, and therefore liability for such injury is not dischargeable in bankruptcy. (6 Am.Jur. § 784, p. 1008.) In fact, under this line of cases the

[1] Section 17(2) of the Bankruptcy Act reads: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . are liabilities for . . . willful and malicious injuries to the person or property of another. . . ."

[2] In *Estrada* the plaintiff had "carelessly and negligently" pulled five teeth from the plaintiff's jaw, in addition to the one that plaintiff wanted extracted. The court at page 57 of the opinion stated: ". . . There can be no doubt that an action based on the theory that an operation is performed without consent of the patient charges an assault and battery. . . ."

word "wilful" as used in the Bankruptcy Act means nothing more than "intentional" and the maliciousness necessary to bring a liability within the exception need only be that which the law implies from the intentional doing of a wrongful act and the injury of another without just cause or excuse. (*Peters* v. *United States,* 177 F. 885 (cert. den. 217 U.S. 606 [54 L.Ed. 900, 30 S.Ct. 696]); *McChristal* v. *Clisbee,* 190 Mass. 120 [76 N.E. 511, 5 Ann.Cas. 769, 3 L.R.A. N.S. 702]; *Kite* v. *Hamblen,* 192 Tenn. 643 [241 S.W.2d 601]; *Thibodeau* v. *Martin,* 140 Me. 179 [35 A.2d 653].) In *Peters* a judgment had been acquired against a school teacher for assault and battery resulting from punishment of a pupil. The federal circuit court, in holding that the judgment was not discharged by her subsequent adjudication in bankruptcy, at page 887 of the opinion, stated:

" 'Wilful and malicious injury' in the bankruptcy act and everywhere in the law, does not necessarily involve hatred or ill will as a state of mind, but arises from 'a wrongful act, done intentionally, without just cause or excuse.' . . ."

Thus, under this view, plaintiff would only have to prove that defendant's liability under the judgment which he acquired by default was based on the second cause of action and nothing more.

On the other hand, under the minority rule, whether a liability arising from an intentional tort such as a battery is wilful and malicious depends upon the true nature of the act, and not only will the court examine the entire record to make this determination, but it may even consider extrinsic evidence. This view was followed in this state in *Fitzgerald* v. *Herzer, supra,* 78 Cal.App.2d 127, 130, where the court stated:

". . . Whether a judgment is cancelled by a discharge in bankruptcy depends on the nature and character of the liability for which it was recovered. Therefore, in ascertaining whether the judgment upon which the instant action is based was discharged the court will go behind the judgment, examine the entire record, and determine therefrom the nature of the original liability, and when necessary extrinsic evidence will be received for the purpose of determining the character of the debt. . . ."

Thus, under the minority rule, a battery is not necessarily wilful and malicious per se, and further inquiry may be made by the court to determine its true character.

Significantly, plaintiff's third cause of action also charges

the defendant with performing the unauthorized surgical treatment referred to in the second cause of action without possessing the license required by the Medical Practice Act of this state. Under this act a person who practices medicine without a license is guilty of a misdemeanor (Bus. & Prof. Code, § 2141). Moreover, the Medical Practice Act was adopted for the well-being of the citizens of the state, and the deliberate violation of its provisions is against public policy. Consequently, if these allegations are deemed admitted, it is arguable that the requirement of malice has been supplied, for it is well settled that an act is malicious when it is "wilful and wanton" and performed in utter disregard of the legal rights of another. (*In re Greene,* 87 F.2d 951.) As a matter of fact, an act is malicious when it is wrongful in itself, or is done with wilful disregard of what one knows to be his duty, or is against public morals. (*Fitzgerald* v. *Herzer, supra,* 78 Cal.App.2d 127.)

However, it is not the classification of the second or third causes of action which is determinative on this appeal, even though, when read together, they are arguably bases for non-dischargeable liability. Rather, the key issue is whether plaintiff has sustained his burden of proving that defendant's liability is predicated on nondischargeable causes of action. (*Halligan* v. *Dowell,* 179 Iowa 172 [161 N.W. 177]; *In re De Lauro,* 1 F.Supp. 678.) We believe he has not.

As we have seen, plaintiff contends that he has met this burden because the defendant defaulted and his default confesses the allegations of all three causes of action. He further asserts that when a plaintiff obtains a judgment arising out of a complaint in which several causes of action are stated, the plaintiff obtains judgment on each and every separate cause of action, independently of the validity and effect of the other cause of action. (*Hunt* v. *City of San Francisco, supra,* 11 Cal. 250; *Fallon & Co.* v. *United States Overseas Airlines, Inc., supra,* 194 Cal.App.2d 546.) Thus, plaintiff concludes that his judgment is necessarily based on a cause of action which is nondischargeable in bankruptcy.

Defendant, citing *Halligan* v. *Dowell, supra,* 161 N.W. 177, contends on the other hand that plaintiff has not met his burden of proof with a default judgment based on a complaint which alleges both dischargeable and nondischargeable claims, because it cannot be ascertained with certainty upon which claim the judgment is actually predicated. In *Halligan,* however, the court was referring to a general verdict involv-

ing several causes of action, none of which had been admitted by the defendant, where the jury verdict did not disclose upon which cause of action the jury had arrived at its decision. This case, therefore, is not in point and does not rebut plaintiff's position that a default judgment confesses the allegations of all causes of action in the complaint.

Plaintiff's argument with reference to a default judgment is persuasive and we would be inclined to agree with his conclusion if the complaint constituted the entire record in this case. ▮▮▮ We believe, however, that where a default judgment has been granted on a complaint stating several causes of action, and where some of the causes of action are inconsistent, the court should look to the entire record in order to determine the true basis of a defendant's liability even though the defendant has defaulted and thereby ''technically'' confessed to the truth of the allegations contained in each cause of action. By doing so the court is not only serving the interests of justice, but it is viewing the judgment, as it should, in a light most favorable to the bankrupt; as said in *In re Grout*, 88 Vt. 318 [92 A. 646 at pages 646, 647, Ann.Cas. 1917A 210], ''. . . The question is to be disposed of upon what appears in the declarations, and the allegations of the declarations are to be given the construction most favorable to the relator; for the burden is on judgment creditor to show that the debt is within the exception. . . .''

▮▮▮ In the instant case the allegations of the first cause of action are inconsistent with the allegations of the second cause of action. In the first cause of action plaintiff alleged that he engaged defendant to treat his condition of hemorrhoids and ''to do all things necessary and proper in connection therewith.'' He further alleged that defendant was negligent and careless in this treatment, and that this was the cause of the injury. Thus, in this cause of action he has alleged a dischargeable claim. In the second cause of action plaintiff alleged that his injury resulted from surgical treatment which was performed without his knowledge and consent. Such an injury, therefore, would have resulted from an unauthorized hemorrhoidectomy. The allegations of the first cause of action are also somewhat inconsistent with the allegations of the third cause of action. As we have indicated, it is reasonably apparent that in charging defendant with performing medical services without a license plaintiff was refer-

ring primarily to the unauthorized hemorrhoidectomy. This is so because in paragraph III of the third cause of action, while complaining of unlicensed medical treatment in general, he referred to certain surgery "in particular."

During the default hearing in which plaintiff obtained his default judgment, however, plaintiff introduced a letter written by Walter Birnbaum, M.D., who examined plaintiff shortly after the alleged unauthorized hemorrhoidectomy.[3] In this letter (which is also a part of the record) the doctor, after explaining plaintiff's condition in detail, observed that "no hemorrhoids can be seen nor any evidence of recent hemorrhoidectomy." In fact, according to Dr. Birnbaum, no surgery or similar medical treatment of any kind was performed on the plaintiff. Thus, Dr. Birnbaum's letter, when viewed in the light of the allegations set forth in plaintiff's first cause of action, provided ample justification for the trial court to find that defendant's liability under the judgment was most likely predicated upon negligence and not upon intentional tort and that, therefore, plaintiff did not sustain his burden of proving nondischargeable liability.

Plaintiff seems to suggest that a consideration of Dr. Birnbaum's letter in arriving at the nature of the defendant's liability is tantamount to looking behind the judgment and constitutes a collateral attack on the judgment itself. Such a contention was rejected in *Fitzgerald* v. *Herzer, supra,* 78 Cal.App.2d 127, where the court stated that even extrinsic evidence may be received for the purpose of determining the character of a debt created by a default judgment. Moreover, in the instant case, Dr. Birnbaum's letter is part of the record itself, and the suggestion is paradoxical because plaintiff himself refers to the record (the complaint) in order to determine the basis of defendant's liability. In any event, it does not constitute a collateral attack on the judgment because the judgment itself is not being attacked. Rather, the sole purpose of the inquiry into the record is to discover the true basis of the judgment, which is not apparent on its face, and to determine the consequences of that discovery.

---

[3] The letter (Plaintiff's Exhibit 1) is dated October 18, 1963, approximately one month after the alleged operation by the defendant. The letter was apparently written by Dr. Birnbaum of the City of San Francisco to Dr. Robert D. Sanford of the City of Modesto. From this it is reasonably apparent that Dr. Sanford had requested Dr. Birnbaum to examine the plaintiff.

Accordingly, the order of the trial court quashing levy and writ of execution is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied February 15, 1967, and appellant's petition for a hearing by the Supreme Court was denied March 15, 1967.