265 P.2d 642

## FIFE v. FIFE.

### No. 7986.

Supreme Court of Utah.

Jan. 21, 1954.

David H. Bybee, Billy Hulsey, Salt Lake City, for appellant.

Horace C. Beck, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a money judgment for plaintiff entered in a marriage annulment suit. Reversed. Costs to defendant.

The parties married in 1944 during the interlocutory period of defendant's previous divorce. Early in 1952, plaintiff was granted an annulment of the marriage and was awarded certain jointly-acquired property. At the same time, *defendant was ordered to pay designated creditors* having claims against the property. He failed to pay and was cited to show cause why he should not be held in contempt. On the day before hearing, he filed bankruptcy schedules, listing, among others, the debts

282

he had been ordered to pay. Next day he was adjudicated a bankrupt and made proof of such fact by certificate. Six months later on plaintiff's petition which prayed only punishment for contempt, he was again cited. He was not found in contempt, but the court *entered judgment against him and in favor of the plaintiff* for the amount she had been forced to pay the creditors in the meantime.

██ Defendant contends that his adjudication gave the bankruptcy court jurisdiction over his assets and liabilities; that any claim by plaintiff necessarily was adjudicable there, and that the state court had no authority to enter the judgment, subject of this appeal. Plaintiff reasons otherwise, urging that to deny such authority would emasculate a state court's power to grant equitable relief simply by seeking sanctuary in bankruptcy; that the order was within the court's power, although entered after the adjudication, and although it pertained to debts which defendant had scheduled in bankruptcy. Alimony is no factor in this case, since generally none is awardable in an annulment suit. The order here was not an order directing payment of alimony or support within the accepted definitions of the terms.[1]

██ Plaintiff's learned counsel concedes that had the judgment been entered before, instead of after defendant's adjudication, it would have been dischargeable in bankruptcy. Since the order to pay could have assumed the form of a judgment upon which execution might have been had, before adjudication (and we may look beyond the judgment to determine the nature of the liability), it would seem only logical to conclude that such order should have no greater stature so far as dischargeability is concerned, than the judgment itself would have had.[2] It follows, and we hold, that the judgment entered after the adjudication evidenced a provable claim in bankruptcy,[3] that it was "in esse" prior to the adjudication, not within the "exception to discharge" language of Sec. 17 of the Act, 11 U.S.C.A. § 35,[4] and not a claim of such nature as not to be provable in bankruptcy,[5] and consequently the state court was without authority to enter such judgment.

Whether defendant's failure to pay after his adjudication could or could not con-

1. See Stoutenburg v. Stoutenburg, 285 Mich. 505, 281 N.W. 305, where even in a divorce case a decree to clear a mortgage in a property settlement was held dischargeable, as not being alimony.
2. See analogy in McFarlane v. McFarlane, 298 Mich. 595, 299 N.W. 728; see also Edmondson v. Edmondson, Mo.App.1951, 242 S.W.2d 730.
3. Sec. 63, sub. a (1), Bankruptcy Act of 1898, as amended, 11 U.S.C.A. § 103, sub. a (1).
4. Halligan v. Dowell, 179 Iowa 172, 161 N. W. 177, writ of error dismissed 246 U.S. 678, 38 S.Ct. 335, 62 L.Ed. 934.
5. Smith v. McQuillin, 193 Mass. 289, 79 N. E. 401.

stitute punishable contempt is not before us, since he was not found to be in contempt. The only matter appealable or appealed here is the correctness of the money judgment. Without deciding the point, we can say that bankrupts frequently and generally are relieved of obligations imposed by state courts. Judgments, with some exceptions, customarily are discharged in bankruptcy. We believe the order here, whether viewed as a judgment or something short thereof, is of the type intended as being provable and dischargeable by the Act. A legitimate pursuit of relief in bankruptcy does not necessarily or inferentially evince any type of intention to defy which ordinarily we ascribe to him who may be guilty of punishable contempt, and the record here justifies no conclusion inconsistent with such concept.

Plaintiff had a remedy, for what it might be worth, by resort to defendant's assets in the bankruptcy proceeding, along with other creditors. To declare a preference for her under the facts of this case, where a judgment came after, instead of before, and when it could have come before, instead of after the adjudication,—when it would have been dischargeable,—would seem unrealistic, unfair and circumventive of the unburdening purpose of the bankruptcy act.

The novel facts here are as provocative of learned counsel's admitted inability to find controlling authorities as they are of his modest self-appraisal that "I have never been complimented on my talent as a legal ferret, but it is possible that there may be some authorities on the problem somewhere." We share his failure in ferreting, but hesitate publicly, and here, and in print, to share the role he assumes in the doing of it.

We confine our conclusion to the facts of this case alone, and leave the rift, if any, between sanctity of state court orders and policies of bankruptcy for appraisement on a stage where may appear actors and props not present here.

The lower court's money judgment is ordered vacated.

McDONOUGH, CROCKETT, and WADE, JJ., concur.

WOLFE, C. J., not participating.