**Peni NITZ, Plaintiff-Appellee,**

v.

**Darrell NITZ, Defendant-Appellant.**

**No. 76–1412.**

United States Court of Appeals, Tenth Circuit.

Dec. 22, 1977.

Pete N. Vlahos, Ogden, Utah, for plaintiff-appellee.

Philip C. Patterson, Ogden, Utah, for defendant-appellant.

Before HOLLOWAY and BARRETT, Circuit Judges, and BOHANON, District Judge.[*]

HOLLOWAY, Circuit Judge.

Darrell Nitz appeals from a judgment of the district court which reversed a bankruptcy judge's determination that certain financial obligations incurred by Darrell and Peni Nitz during their marriage, and assumed by Darrell Nitz pursuant to their divorce decree, do not constitute non-dischargeable obligations for alimony or for maintenance or support of wife or child, 11 U.S.C. § 35(a)(7) (1970), but rather are in the nature of a property settlement and are therefore dischargeable in bankruptcy.

The record shows the following facts which are undisputed: During 1974, Peni Nitz commenced an action in the District Court of Weber County, Utah, to obtain a divorce from Darrell Nitz. Darrell Nitz consented to allow Peni Nitz to obtain the divorce by default, which was agreed to by a written "Stipulation of Agreement." (R. II, 21). The stipulation and the Divorce Decree entered in December, 1974 (R. II, 19), provided in relevant part that Darrell Nitz pay child support of $75 per month for each of the parties' two children, that he pay $100 per month alimony for a period of six months and $1 per year thereafter, and that he assume and discharge all the financial debts and obligations[1] incurred by the

---

[*] The Honorable Luther L. Bohanon of the Western District of Oklahoma, sitting by designation.

1. These financial obligations were not classified (*e. g.* alimony, child support, or property settle-

ment). The $100 per month alimony and the $75 per month per child child support were specifically labeled as such.

parties during the marriage, with the exception that Peni Nitz was ordered to assume and discharge the mortgage on the home of the parties. (R. II, 19–20).

The financial obligations which Darrell Nitz was ordered to assume and satisfy, and whose dischargeability in bankruptcy is in dispute, include a $1500 down payment balance on the home that the parties had acquired during the marriage, a partially secured loan with a balance of $3700 executed by both parties, an unsecured loan with a balance of $500 signed by Peni Nitz alone, a retail store charge account balance accrued by Peni Nitz and a Master Charge card balance of $675.60. (R. II, 7).

Peni Nitz was awarded the sole ownership and possession of the home which the parties had acquired and jointly owned during the marriage, together with the equity therein and was further awarded all household furnishings and appliances. (R. II, 8). The parties were ordered to divide equally their 1974 federal and state income tax refunds and Peni Nitz was allowed to claim the two children of the parties as dependents on her personal income tax returns for each calendar year following the calendar year 1974. (R. II, 20). Finally, Darrell Nitz was ordered to maintain a life insurance policy on himself, naming the children as beneficiaries. He was also ordered to maintain policies on the children, which policies were to designate both his former wife and himself as beneficiaries. (R. II, 20).

Both parties were gainfully employed when the divorce action was commenced and at the time the divorce decree was entered. The bankruptcy judge found that Darrell Nitz was then employed as a construction equipment operator, and also earned some income as a reservist in the United States Army Reserve. His gross income for the calendar year 1974 from these sources was approximately $10,400. Peni Nitz was then employed by the Internal Revenue Service and her gross income

for the calendar year of 1974 was approximately $9,066. (R. II, 8).

Darrell Nitz petitioned for voluntary bankruptcy in the bankruptcy court division of the district court in May, 1975. In July, 1975, Peni Nitz filed a complaint in the bankruptcy court for a determination that the obligations in question, alleged therein to be for support and alimony, are not dischargeable. After trial, the bankruptcy judge entered findings that the financial obligations other than the specifically enumerated alimony and child support items constitute a property settlement between the parties and concluded that, therefore, they are dischargeable in bankruptcy. (R. II, 9–10).

Peni Nitz appealed this adverse judgment to the district court. That court reversed, holding that the financial obligations in question are for support, alimony and maintenance of the minor children and are therefore not dischargeable in bankruptcy. (R. II, 16–17).

On appeal, Darrell Nitz argues that the district court erred in its ruling because the findings of fact of the bankruptcy judge in his favor were not clearly erroneous, that appellee Peni Nitz failed to order a transcript of the trial in the bankruptcy court for appropriate appellate review of the court's findings, and that the findings and conclusions of the bankruptcy court were a correct application of Utah law. (Brief of Defendant-Appellant, 6–10).

To sustain the district court's ruling in her favor appellee Peni Nitz replies that the findings of the district court were based on sufficient evidence to reverse the bankruptcy judge, that intent of the stipulation and decree was clear on the face of those instruments and could not be re-established by testimony,[2] and that appellant Darrell Nitz, if he thought the record relevant, had failed to exercise his right to augment the record by obtaining a transcript of the bankruptcy

---

**2.** Appellee Peni Nitz relies on the face of the decree and stipulation as showing that the obligations were in the nature of alimony and support. *Jones v. Tyson,* 518 F.2d 678, 681 (9th Cir.).

court's trial. (Brief of Plaintiff-Appellee, 7, 10).

■ We must consider Utah law carefully since our question as to whether the obligations are in the nature of alimony or support, as opposed to a property settlement, is determined by state law. *In Re Waller,* 494 F.2d 447, 448 (6th Cir.); see *In Re Cox,* 543 F.2d 1277, 1279 (10th Cir.); cf. *DeSylva v. Ballantine,* 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415. The Utah statute under which a decree providing for alimony and support and maintenance of a wife and children may be entered is § 30–3–5, Utah Code Annotated (1953).[3]

Two of the principal Utah cases on the question before us are *Erickson v. Beardall,* 20 Utah 2d 287, 437 P.2d 210, and *Lyon v. Lyon,* 115 Utah 466, 206 P.2d 148. In *Erickson* the Court held certain obligations imposed by the divorce decree were not dischargeable in bankruptcy: obligations for a balance on a note to the wife, a debt for siding on a family home, debts to a bank, and debts for a car and a television set. The Court stated, 437 P.2d at 212–13, that in determining whether obligations imposed by a divorce decree constitute alimony and support rather than a property settlement:

> We reaffirm and apply the principle of the Lyon case: that it is the duty of the court to look to substance rather than to form [of the divorce decree].
>
> \*   \*   \*   \*   \*   \*
>
> *It is shown that the plaintiff's means of support would have been inadequate without the provision of the decree that the defendant pay these obligations, and there is ample basis for the trial court's finding that this requirement was for her support and maintenance.* That conclusion is not defeated by the fact that it

also has the coincidental effect of reimbursing the plaintiff for money that had been expended for the benefit of the family during the marriage. (Emphasis added).

Thus the obligations were enforced, despite the objections that they had been discharged in bankruptcy, since it had been "shown" that the wife's means of support would have been "inadequate" without payment of the obligations in question.

In *Lyon v. Lyon,* supra, the Utah Court also held that unpaid obligations had not been discharged in bankruptcy. The terms "alimony" and "support money" did not appear in a stipulation for a divorce judgment of $5,000, payable at $50 or more per month, for payment of a mortgage by the husband on land owned by the parties, and for carrying a life insurance policy naming the wife as beneficiary until the $5,000 judgment and mortgage were paid. Nevertheless, the Utah Supreme Court pointed to evidence of discussions that the $5,000 was for the wife's "support and maintenance," *id.* at 151, and stressed the trial court's reasoning that, looking behind the decree and stipulation, much of the property awarded was "in the nature of alimony" and contemplated to be for the support and maintenance of the wife. *Id.* at 150. The Court said that the provisions for carrying insurance on the husband's life, with the wife named as beneficiary, and giving her all the household furniture and furnishings (similar provisions are in the Nitz decree) pointed to the idea of support. *Id.* at 151. However, the Court also pointed to evidence of "positive testimony" that the obligations were for the wife's support and maintenance and to evidence that the wife was practically unemployable at her age. *Id.* at 151.

**3.** Section 30–3–5 provides as follows:

30–3–5. Disposition of property—Maintenance of parties and children—Court to have continuing jurisdiction—Custody and visitation.—When a decree of divorce is made, the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children, as may be equitable. The court shall have con-

tinuing jurisdiction to make such subsequent changes or new orders with respect to the support and maintenance of the parties, the custody of the children and their support and maintenance, or the distribution of the property as shall be reasonable and necessary. Visitation rights of parents, grandparents and other relatives shall take into consideration the welfare of the child.

In short, in the Utah cases the Court looked in detail at proof establishing the character of the provisions as being for support. Here, however, the record does not furnish such a basis to support the wife's contention.

In our case, we can only consider the facts and circumstances that appear on the face of the stipulation and decree and in the findings of the bankruptcy judge, since no further record was brought up. There were specific provisions in the instruments for child support of $150 per month and for $100 of alimony per month for six months, and $1.00 per year thereafter. Beyond that, the obligations were not stated to be for alimony or maintenance or support of the wife or children. Here, unlike *Erickson,* supra, 437 P.2d at 212, there is no evidence or finding that without payment of the obligations the provisions for the wife would have left her with inadequate means of support. Furthermore, the findings do not show her to have been practically unemployable as in *Lyon,* supra, 206 P.2d at 151. On the contrary, it was found that she earned approximately $9,066 in 1974 as an IRS employee. (R. II, 8).

The wife as the party objecting to the discharge "has the burden of proving the facts essential to [her] objection." Rule 407, Federal Bankruptcy Rules. The bankruptcy judge was not persuaded by the proof and found that with the exception of the express provisions for alimony and child support, "all remaining obligations imposed on Darrell Nitz, and in favor of Peni Nitz,

by terms of the divorce decree, constitute a property settlement between the parties." Obligations which are not in the nature of alimony but are part of a property settlement are dischargeable. See *Caldwell v. Armstrong,* 342 F.2d 485, 488 n. 5 (10th Cir.).

The findings of the bankruptcy judge are not to be set aside unless clearly erroneous.[4] Rule 752(a), Bankruptcy Rules of Procedure. It is apparent that the bankruptcy judge based significant findings on evidence presented at the trial before him which was not made a part of the appellate record before the district judge, and is not before us.[5] Upon examination of the record and relevant Utah law, we conclude that the district court had no adequate basis to reject the bankruptcy judge's findings and should have accepted them.[6] *Rachback v. Cogswell,* 547 F.2d 502, 504 (10th Cir.); see *United States v. Bob Lawrence Realty,* 474 F.2d 115, 126 (5th Cir.), cert. denied, 414 U.S. 826, 94 S.Ct. 131, 38 L.Ed.2d 59.

Accordingly, the judgment of the district court is reversed and the cause is remanded for reinstatement of the order of the bankruptcy judge.

---

4. On appeal to this court the question is whether the findings of the bankruptcy judge, and not those of the district court, were clearly erroneous. *Potucek v. Cordeleria Lourdes,* 310 F.2d 527, 530 (10th Cir.), cert. denied, 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734.

5. In this connection, we note that the docket sheet in our docketing statement shows that both Peni and Darrell Nitz testified at the trial before the bankruptcy judge. Moreover, there are several items in the bankruptcy judge's findings which are not covered by the divorce decree and stipulation, or other evidence in the appellate record—*e. g.,* Peni Nitz' approximate 1974 gross income of $9,066; Darrell Nitz' 1974 approximate gross income of $9,500 from his

construction employment and $900 from his service in the reserves; and the figures on the obligations which Darrell Nitz was ordered to assume and discharge. (See R. II, 7–8, 20–22).

6. We agree that the appellant Peni Nitz may argue from the decree and stipulation she brought up that the bankruptcy judge erred as a matter of law. See *Jones v. Tyson,* supra, 518 F.2d 678, 681. However, where State law calls for an assessment of the circumstances and where these circumstances are described in testimony before the bankruptcy judge, but not included in the appellate record for the district court, that court did not have an adequate basis for rejecting the findings of the bankruptcy judge as clearly erroneous.