**In the Matter of Byron C. GWINN II and Patricia Gwinn, Debtors.**

**John W. PORTER, Jr., Plaintiff,**

**v.**

**Byron C. GWINN II, Defendant.**

**Bankruptcy No. BK–LV 80–092. Adv. No. 80–0062.**

United States Bankruptcy Court, D. Nevada.

Feb. 3, 1981.

John W. Porter, Jr., of Porter, Huffman & Alford, San Diego, Cal., for plaintiff.

Leonard A. Wilson, Las Vegas, Nev., for defendant.

## MEMORANDUM OPINION

LLOYD D. GEORGE, Bankruptcy Judge.

Now before the Court for consideration is a motion seeking a summary judgment in favor of the above-named Defendant. Because the Court finds, from the facts agreed upon by the parties, that the Plaintiff lacks standing to bring this action summary judgment will be granted the Defendant.

## I.  BACKGROUND

In December 1978, the Defendant and his former wife, Jean Ellen Gwinn, were involved in extensive child custody litigation in the Superior Court of the State of California, in and for the County of San Diego. On December 14, 1978, Judge George A. Lazar of that court notified counsel for both parties that he was going to award custody of the couple's children to Mrs. Jean Ellen Gwinn. Judge Lazar further ordered Mr. Gwinn, at that time, to pay attorneys' fees amounting to $15,000 to the Plaintiff, who had acted on behalf of the former Mrs. Gwinn in the controversy, and another $5,000 to a Mr. Andrew G. Wagner, who had served as counsel for the couple's minor children. On April 10, 1979, a second order was entered directing the manner in which Mr. Gwinn was to pay these fees.

On January 31, 1980, the Debtor and his present wife, Patricia Gwinn, filed a petition under joint administration as husband and wife, under Chapter 7 of the Bankruptcy Code. Thereafter, on June 2, 1980, the above-entitled complaint was docketed. It seeks a determination that the obligation owed the Plaintiff under Judge Lazar's custody decree is non-dischargeable under 11 U.S.C. § 523(a)(5). On October 8, 1980, before a hearing could be held on this matter, the Defendant filed a motion for summary judgment on the facts alleged by the Plaintiff.

## II.  ANALYSIS OF THE FACTS AND THE LAW

In support of his present motion, the Defendant urges that the Court adopt the two-prong test set forth by the United States Bankruptcy Court for the Western District of New York in the similar case of *In re Spong*, 3 B.R. 619 (Bkrtcy.W.D.N.Y. 1980, Hayes, B.J.). In *Spong*, Bankruptcy Judge Edward D. Hayes began his analysis by noting that in creating the alimony, maintenance, or support exception to discharge, Congress intended that federal bankruptcy law, not general State law, govern the definitions given those terms. He then held that

"[u]nder this standard in § 523(a)(5), they [Congress] set up a twofold test for the dischargeability of alimony, maintenance or support.

"The first test which the alimony, maintenance or support must meet is that it must be payable to a spouse, former spouse and[/]or child.... The second test is that it must be actually of the nature of alimony, maintenance or support."

*Id.* at 622.

The *Spong* court consequently determined that although the obligation owed by the debtor in that case to the attorney for his former wife could be characterized as being in the nature of alimony, mainte-

nance or support, it failed to satisfy the first portion of the above test. The debt was not "payable to a spouse, former spouse and[/]or child." *Id.* Moreover, even if the debtor's spouse might, herself, be in a position to bring a direct action on that same obligation, her attorney lacked standing to do so on his own behalf. *Id. See also* 3 Bkr.L.Ed. § 22.34, at 53–54 (1979). Therefore, this debt was not excepted from discharge under 11 U.S.C. § 523(a)(5), at least insofar as it might have been enforced by the plaintiff in that case.

This Court believes that Judge Hayes's reading of the legislative history behind Section 523(a)(5) of the Bankruptcy Code is correct. In particular, the Court is convinced that Congress never intended that third parties, such as the present Plaintiff, have standing to pursue the sort of obligation now in question. Both the House and Senate Reports, in discussing their respective versions of Section 523(a)(5), establish that this provision "excepts from discharge debts *to a spouse, former spouse, or child of the debtor* for alimony to, maintenance for, or support of, the spouse or child." H.Rep. No.95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320 (emphasis supplied). *Compare* S.Rep.No.989, 95th Cong., 2d Sess. 79 (1978). These reports further note the following:

"This language, in combination with the repeal of section 456(b) of the Social Security Act (43 U.S.C. 656(b)) [sic] by section 327 of the bill, will apply to make dischargeable only alimony, maintenance, or support *owed directly to a spouse or dependent. See Hearings*, pt. 2, at 942. What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law. Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir. 1974); *Hearings*, pt. 3, at 1308–10, are overruled, and the result in cases such as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. *See Hearings*, pt. 3, at 1287–1290."

*Id.* (Emphasis supplied). Furthermore, although the obligation owed by the present Debtor to counsel for his former wife may also be owed directly to the ex-Mrs. Gwinn under California law, *see* Cal.Civ.Code § 4371 (1980),[1] the above legislative history would indicate that she and, perhaps, her children are the only parties who may bring an action for recovery on this debt notwithstanding the discharge provided under Section 523. *See In re Allen*, 4 B.R. 617, 619 (Bkrtcy.E.D.Tenn.1980, Bare, B.J.); 3 Bkr. L.Ed. § 22.34, at 53–54 (1979).

In opposition to the results reached in the *Spong* and *Allen* cases cited above, the Plaintiff has presented the Court with a recent opinion filed by Judge Lawrence Fisher of the United States Bankruptcy Court for the Northern District of Illinois. *In re Pelikant*, 5 B.R. 404 (Bkrtcy.N.D.Ill. 1980, Fisher, B.J.). In *Pelikant*, the court was faced, as is now the case, with an attorney-plaintiff seeking to enforce an

---

1. California Civil Code § 4371 provides:

"When the court orders one of the parties to pay costs and attorneys' fees for the benefit of the other party, such costs and fees may, in the discretion of the court, be made payable in whole or in part to the attorney entitled thereto. An order of the court providing for payment of such costs and fees may be enforced directly by such attorney in his own name or by the party in whose behalf such order was made, provided that if such attorney has ceased to be such, it shall be a condition of such enforcement, and must appear of record, that such attorney shall have given to his former client or successor counsel 10 days' written notice of his application for such enforcement, and during such period the client may file in such proceeding a motion directed to such former attorney for partial or total reallocation of fees and costs to cover the services and cost of successor counsel, in which event such proceeding shall be stayed until the court has resolved such motion.

award of attorney's fees made pursuant to a divorce decree. After first holding that Illinois law might be *utilized* in determining the nature of the award in question, despite the injunction of both the House and Senate Reports that federal bankruptcy law, not State law, *ultimately govern* such matters, the *Pelikant* court then went on to reject the argument that this obligation had been excluded from protection under 11 U.S.C. § 523(a)(5) by its "assignment" to counsel. *Id.* at 406–08.[2]

In so holding, Judge Fisher cited language from a hearing on the initial House bankruptcy reform bills, H.R. 31 and H.R. 32, to the effect that the principal assignees which were meant to be precluded from this exception to discharge were governmental entities, such as state and federal welfare agencies.[3]

This Court believes, however, that neither the facts found in the present case, nor those set forth in *Pelikant*, raise any question of an assignment, as would bring into play Section 523(a)(5)(A). In each case, the obligation which is sought to be enforced is owed directly to counsel for the debtor's former spouse by way of a divorce decree. The more pertinent question which must be raised, therefore, is whether the creation of such an obligation, when done *on behalf of* a spouse, former spouse, or child, transfers

those non-dischargeability rights which would normally accrue to the latter parties under Section 523(a)(5). The legislative history cited in the *Spong* and *Allen* cases clearly indicates that Congress did not intend that these non-dischargeability rights be enforceable by anyone other than a spouse, former spouse, or child. All others lack standing to assert such rights.

In any case, this Court does not agree with the *Pelikant* holding that Section 523(a)(5)(A) impacts solely upon governmental assignees. Its broad wording affects all assignments to "another entity." "Entity" is defined by the Code as including a "person, estate, trust, [or] governmental unit." 11 U.S.C. § 101(14) (1978). Although the principal thrust of subsection (A) may have been aimed at state and federal social welfare agencies, the Court believes that it was purposely drafted to include private, as well as public collection entities or assignees. Only the debtor's spouse, former spouse, or child were deemed worthy enough of special protection by Congress to require a contravention of the "fresh start" policy normally applied in bankruptcy.[4]

## III. CONCLUSION

Given the Plaintiff's inability to claim standing to seek enforcement of this obliga-

2. Section 523(a)(5)(A) of the Bankruptcy Code, relied upon by the *Pelikant* Debtor in arguing that the "assignment" made to counsel would render dischargeable the obligation in question, provides as follows:

"(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

.     .     .     .     .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; . . . ."

3. The hearing language cited by Judge Fisher in support of his position in the *Pelikant* case notes:

"Debts related to child support obligations and marital property settlements also are not exempted from discharge. § 4–506(a)(6) of

H.R. 31 and H.R. 32 perpetuate [sic] this exemption, although the latter version is more narrowly drawn. Unfortunately, neither bill clearly states that this exception to discharge does not extend to state welfare department liens. This exemption should be a narrow one, benefitting only the expressed beneficiaries, not governmental entities like the welfare department . . . [W]e urge the adoption of H.R. 32 § 4 506(a)(6) with redrafting to insure the intended results."
*Bankruptcy Act Revision: Hearing on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary*, 94th Cong., 1st and 2d Sess. 942 (1975–76).

4. The Plaintiff nevertheless maintains that in enforcing the obligation owed him, Mr. Gwinn's former wife is being benefitted by the relief which accrues to her from not having to pay her counsel for his labors in the California custody suit. This Court is not in a position to determine whether the former Mrs. Gwinn shall be so advantaged from a ruling in favor of

tion in the face of the Debtor/Defendant's discharge, the Court must grant the motion of the latter for summary judgment. In so doing, however, the Court makes no determination as to whether the second part of the *Spong* test has been met. That is to say, the Court will not decide whether the award of attorneys' fees to the Plaintiff was in the nature of alimony, maintenance or support, so as to permit the former Mrs. Gwinn to pursue her potential rights under Section 4371 of the California Civil Code.

The Court will prepare its own judgment in this matter. This Memorandum Opinion shall serve, for all purposes and pursuant to Federal Bankruptcy Rule 752, as the Findings of Fact and Conclusions of Law of the Court in this matter.

the Plaintiff. If, for example, the Debtor's ex-wife were to become a debtor in bankruptcy, herself, or be in a position to prevent recovery directly against her, because of her agreements with, or as a result of the actions, taken by, the Plaintiff in acting as her attorney, it would serve no direct benefit to her that the Defendant now be required to provide compensation for his former wife's counsel. Without the inclusion of the Debtor's former wife in this adversary proceeding, a result might be reached which, in both legal and practical terms, contradicts the clear intent of Section 523(a)(5) that it only shield those to whom the Debtor owes a familial, as well as a legally enforceable, duty of payment or support.