**Joan HOLT, Plaintiff and Respondent,**

v.

**Douglas J. HOLT, Defendant and Appellant.**

**No. 18692.**

Supreme Court of Utah.

Oct. 17, 1983.

---

George H. Searle, Salt Lake City, for defendant and appellant.

Jeffrey W. Shields, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

On October 7, 1981, plaintiff Joan Holt filed a complaint against defendant Douglas J. Holt for divorce. In the body of the complaint, plaintiff alleged, *inter alia,* that defendant should be ordered to pay the debts and obligations incurred during the marriage and that plaintiff should be held harmless therefrom. This allegation was also included as an item of the demand for relief in the complaint, although the "hold harmless" clause was not included. The complaint further contained an allegation to the effect that plaintiff "should not be awarded any alimony whatsoever." De-

fendant filed his answer on November 10, 1981.

On November 20, 1981, plaintiff filed an amended complaint containing, *inter alia,* the same provisions regarding alimony and the payment of the marital debts and obligations as the original complaint, *supra.* Defendant did not file an additional answer to this amended complaint. He did, however, enter into a stipulation and property settlement agreement (hereinafter "stipulation") with plaintiff, which was filed December 28, 1981, wherein he withdrew his answer to the original complaint and agreed to have the case heard upon plaintiff's amended complaint as modified by the stipulation.

It is noted that the stipulation did not contain a provision respecting the payment of marital debts and obligations and therefore did not modify the provision to that effect in the amended complaint. The same cannot be said, however, with regard to the alimony provision in the amended complaint; it was modified by the following provision in the stipulation:

2. That Plaintiff shall be awarded the Chevelle automobile, subject to the Defendant paying the balance due and owing thereon; said monthly payments to be as and for *alimony* and said alimony shall cease upon payment by the Defendant of all of the payments due and owing to pay off the balance due on the Chevelle automobile. [Emphasis added.]

The hearing on this matter was held on January 11, 1982, at which time a default judgment was entered against defendant. The trial court indicated in its findings of fact that the matter had been heard "upon plaintiff's [amended] complaint as modified by the stipulation and property settlement agreement." Pursuant to said stipulation and complaint, the trial court ordered, *inter alia,* in its decree of divorce that defendant pay the marital debts and obligations and hold plaintiff harmless from the same, and that he pay, in the nature of alimony, the

balance owing on the Chevelle automobile (such automobile being simultaneously awarded in the decree to plaintiff).[1]

Subsequent to the entry of the divorce decree, defendant filed a petition in bankruptcy and was granted relief under Chapter 7 of the Bankruptcy Code. Thereafter, on April 9, 1982, plaintiff sought and obtained an order to show cause why defendant should not be held in contempt for failure to pay the debts that he was obligated to pay under the terms of the decree. The show cause hearing, held on June 23, 1982, resulted in the following judgment:

ORDERED, ADJUDGED AND DE-CREED that the discharge in Bankruptcy of the Defendant as to a joint obligation of the parties hereto to Mastercharge has full force and effect as to the discharge and as to the creditor but that the discharge in Bankruptcy of the Defendant does not relieve the Defendant of the Order of the Court in the Decree of Divorce to hold the Plaintiff harmless from such obligation and that it is in fact the obligation of the Defendant to hold the plaintiff harmless from such obligation regardless of the discharge in Bankruptcy and that the Defendant has failed and refused to hold the Plaintiff harmless therefrom and the Defendant is in contempt of the Court and is sentenced to five (5) days in the County jail, the execution of said sentence being stayed for a period of thirty (30) days from the entry of this judgment to permit the Defendant to purge himself of said contempt to the satisfaction of the Court or for the Defendant to appeal such Judgment if he shall desire to so do.

On appeal, defendant challenges the validity of this judgment insofar as it rests upon the requirement that defendant "hold the plaintiff harmless" from the debts incurred during the marriage.

Defendant contends that the order in the divorce decree requiring him to "hold the plaintiff harmless" from the marital debts

1. These orders of the decree were entered pursuant to identical provisions contained in the findings of fact and conclusions of law.

and obligations was improper inasmuch as neither the stipulation nor the demand for relief in the amended complaint requested such broad relief.

While it is true that the extent of relief granted by the decree was not demanded in the amended complaint or included in the stipulation, it was specifically alleged in the body of both the original and amended complaints. The issue, therefore, is whether plaintiff's failure to include the specific relief, i.e., that she be "held harmless" by defendant, in either the demand for relief or the stipulation, notwithstanding its inclusion in the body of the complaint, precluded the trial court from incorporating it as part of the order in the default judgment (divorce decree).

▮ The generally accepted rule with regard to the scope of relief granted in a default judgment has been pronounced thus:

> [A] party to a lawsuit may voluntarily default and in so doing rely on the relief requested in the pleadings. A defaulting party should expect that the relief granted will not exceed or substantially differ from that sought in the complaint.[2]

Furthermore, "relief granted in a judgment by default must be not only within the fair scope of the allegations of the complaint, but also within the fair scope of the prayer thereof."[3]

▮ As indicated above, the parties to the instant suit agreed in the stipulation to have the case heard upon the amended complaint, as modified by the stipulation. As further noted above, the allegation in the amended complaint that defendant should hold plaintiff harmless was not altered or modified by the stipulation. Accordingly, this allegation need not have been included in the stipulation, so long as it was adequately set forth in the amended complaint.

We have reviewed the contents of both the amended complaint and decree of divorce respecting the subject of marital debts and obligations and conclude that the extent of relief granted by the trial court in the decree (i.e., that plaintiff be held harmless) did not exceed the fair scope of the allegations and demand for relief of the complaint. As noted above, a specific allegation that defendant hold plaintiff harmless was made in the body of the amended complaint. Although the corresponding demand for relief did not include the "hold harmless" language, it did not indicate that such relief was no longer sought, nor did it produce the effect, apparently proposed by defendant, of cancelling or diminishing such relief. Together, the allegation in the body of the complaint and the demand for relief plainly seek relief to the very extent it was granted in the divorce decree.

▮ Defendant further contends that the trial court erroneously relied upon the "hold harmless" clause as a mechanism for circumventing federal bankruptcy law. This contention arises out of that portion of the contempt judgment, *supra,* wherein the trial court ruled that although the discharge in bankruptcy relieved defendant of his obligation to Mastercharge (creditor) on the joint account maintained by defendant and plaintiff during their marriage, it did not relieve him of his obligation to plaintiff, pursuant to the decree of divorce, to hold her harmless on said account. Defendant maintains that a "hold harmless" provision, in and of itself, does not render an otherwise dischargeable debt nondischargeable. We agree.

We note that under the new Bankruptcy Code, the issue of dischargeability is one which must be determined upon the basis of federal bankruptcy law.[4] State law, though not controlling on such issues, is however

2. *In re Marriage of Thompson,* 32 Wash.App. 179, 646 P.2d 163, 166 (1982). *See also Columbia Val. Credit Exchange, Inc. v. Lampson,* 12 Wash.App. 952, 533 P.2d 152 (1975); *Southern Arizona School for Boys, Inc. v. Chery,* 119 Ariz. 277, 580 P.2d 738 (Ariz.App.1978).

3. 47 Am.Jur.2d Judgments § 1176 (1969).

4. *See In re Petoske,* 16 B.R. 412 (Bkrtcy.E.D.New York 1982); *In re Bonhomme,* Bankr.L. Rep. (CCH) ¶ 67816 (Bankr.W.D.Okla.1981).

relevant, inasmuch as all domestic relations law is of state court origin.[5]

The definition of a nondischargeable debt, in the domestic relations context, is set forth in § 523(a)(5) of the Bankruptcy Code:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.[6]

Under this definition, the fundamental inquiry, for purposes of determining whether a debt is nondischargeable, is into the nature of the liability: to wit, whether it is "in the nature of alimony, maintenance or support." Laws and considerations of a state origin, such as the "hold harmless" provision in the instant matter, while relevant to the determination of this inquiry, have no independent significance with respect to the overall determination of dischargeability.

Respecting the weight accorded a "hold harmless" provision in the determination of dischargeability, the legislative history of § 523(a)(5) indicates:

> [Section 523(a)(5) ] will ... make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, *to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse,* as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. [Emphasis added.] [7]

This principle is applied universally in bankruptcy courts.[8]

In view of the foregoing, the trial court's apparent reliance upon the "hold harmless" provision in the divorce decree as the basis for its decision that the Mastercharge debt was nondischargeable, was improper. The provision should merely have been considered for its relevance to the fundamental inquiry into whether the debt was in the nature of alimony, maintenance or support.

■ It is of course defendant's position that the subject debt was not in the nature of alimony, maintenance or support. He relies primarily upon the case of *Fife v. Fife,*[9] wherein this Court held that certain debts which had been imposed upon the defendant as a result of a marriage annulment suit were not in the nature of alimony, maintenance or support and thus were not excepted from the rule of dischargeability.

We do not share defendant's view that the decision in *Fife* with respect to the issue of dischargeability is dispositive of the same issue in the instant case. The Court noted in *Fife* that its conclusion was confined to the facts of that case alone and that future cases involving the same issues would most likely involve "a stage where may appear actors and props not present here." [10] In-

---

5. *Id. See also In re Spong,* 661 F.2d 6, 9 (2d Cir.1981).

6. 11 U.S.C. § 523(a)(5).

7. 124 Cong.Rec. H11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); *id.* at S17,-412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini). *See also* 11 U.S.C.S. § 523 (Law. Coop.1979).

8. *See In re Miller,* 8 B.R. 174 (Bkrtcy.N.D.Ohio 1981); *In re Diers,* 7 B.R. 18, 6 B.C.D. 983, 2 C.B.C.2d 1330 (Bkrtcy.S.D.Ohio 1980); *Matter of Hughes,* 16 B.R. 90 (Bkrtcy.N.D.Ala.1981); *In re Beard,* 4 B.C.D. 1047 (Bkrtcy.Iowa 1978).

9. 1 Utah 2d 281, 265 P.2d 642 (1954).

10. *Id.* at 283, 265 P.2d at 644.

deed, the actors and props on the present stage are distinguishable from those in *Fife*.

Perhaps the most significant distinction between *Fife* and this case is borne out in the statement made by the *Fife* Court to the effect that alimony was not even a factor or possibility inasmuch as the disputed debts had arisen from an annulment proceeding, wherein alimony generally is not awardable.[11] In contrast, in the instant case, alimony is most definitely a factor because the disputed debt arose out of a divorce proceeding, which generally does involve alimony, and furthermore, because the parties hereto agreed in the stipulation that alimony should be paid. In fact, the very foundational question in this case is whether defendant's obligation with respect to the Mastercharge debt constitutes an obligation in the nature of *alimony,* maintenance or support.

Another noteworthy distinction is that in *Fife,* the appeal went to the validity of a postadjudication (bankruptcy) "money judgment," whereas in this case the challenge is to the validity of a postadjudication "contempt judgment." The *Fife* Court specifically noted that the issue of the validity of a postadjudication "contempt" order was not before it.[12]

Furthermore, the *Fife* decision does not contain sufficient detail with respect to the debts themselves, or the rationale upon which the determination of dischargeability was made, to allow a reasonable comparison and application thereof to the instant case. Perhaps due to the simplicity of the facts surrounding this issue in *Fife,* all that is said in the way of disposition is:

Alimony is no factor in this case, since generally none is awardable in an annulment suit. The order here was not an order directing payment of alimony or support within the accepted definitions of the terms.[13]

For these reasons, we hold that defendant's reliance upon *Fife* is misplaced.

■ Pertinent to the inquiry here into the underlying purpose or nature of defendant's obligation to pay the Mastercharge debt are the recent pronouncements of the federal bankruptcy court in the case of *In re Huggins.*[14] In *Huggins,* the court discussed the various tests that are currently applied to determine whether an obligation (debt assumption) is in the nature of alimony, maintenance or support.[15] The test which was determined to be dispositive in that case, which we also consider dispositive in the present case, is one whose origin lies in the courts of this state. It is that "[i]f without the debt assumption, the spouse would be inadequately supported, the debt assumption was meant to be support."[16] Cited as authority for the test is a United States Court of Appeals (Tenth Circuit) decision, *Nitz v. Nitz,* 568 F.2d 148 (1977) wherein the test was actually adopted from two former Utah cases, *Lyon v. Lyon*[17] and *Erickson v. Beardall.*[18] In *Nitz,* the following language from the *Erickson* decision was quoted and relied upon:

We reaffirm and apply the principle of the Lyon case: that it is the duty of the court to look to substance rather than to form [of the divorce decree]. . . .

It is shown that the plaintiff's means of support would have been inadequate without the provision of the decree that the defendant pay these obligations, and

11. *Id.* at 282, 265 P.2d at 643.

12. *Id.* at 282–83, 265 P.2d at 644.

13. *Id.* at 282, 265 P.2d at 643.

14. 12 B.R. 850 (Bkrtcy.D.Kan.1981).

15. According to the *Huggins* court, the tests for determining the nature of an assumed debt, in the present context, are: (1) the "necessaries" test, (2) the "time debt was incurred" test, (3) the "intent" test, (4) the "income disparity"

test, (5) the "conditional assumption" test, and (6) the "adequacy of support absent the assumption" test. *See also In re Petoske, supra* n. 4.

16. *Supra* n. 14, at 854.

17. 115 Utah 466, 206 P.2d 148 (1949).

18. 20 Utah 2d 287, 437 P.2d 210 (1968).

there is ample basis for the trial court's finding that this requirement was for her support and maintenance.[19]

In the instant case, if we were to consider merely the "form" of the obligations set forth in the divorce decree, we would most likely conclude that the only obligation constituting alimony, maintenance or support is the one expressly labelled as such: to wit, the order requiring defendant to pay the balance owing on the Chevelle automobile as alimony. However, if we "look to substance rather than to form," *supra,* particularly with respect to the Mastercharge and other debts from which defendant was to hold plaintiff harmless, we find that these obligations too, although lacking the appropriate label, are in the nature of alimony, maintenance or support.

That plaintiff was in need of financial support and maintenance and that both parties acknowledged this need are clearly borne out in both the amended complaint and the stipulation. In the amended complaint, although plaintiff alleged that she did not want alimony, as such, she did allege that defendant should provide her with a car until such time as she could purchase her own, which she proposed to do with funds from the parties' joint tax return, and further, that unless she were provided a car or the funds to purchase one, she would not be able to maintain her livelihood. Because of the apparent insufficiency of her earnings (i.e., she could not even afford a car payment), plaintiff alleged further that defendant would have to be responsible for the marital debts and obligations.

In the stipulation, the aforementioned provisions of the amended complaint respecting alimony, tax return funds and automobiles were modified somewhat in form, which, in effect, more clearly expressed the intended substance of those provisions. The stipulation provided that plaintiff be awarded, *in the nature of alimony,* a 1970 Chevelle automobile to be paid for by defendant and that separate income tax returns be filed by the parties. It further provided that the remaining unmodified provisions of the amended complaint, one of them being the order that defendant hold plaintiff harmless from the marital debts, be observed by the parties. Such modifications accentuate plaintiff's need of support and inability to assume any financial responsibility beyond her mere living expenses.

It is the Court's conclusion, based on the foregoing, that the assumption of the Mastercharge debt by defendant was in substance, although perhaps not in form, just as much an obligation of support and maintenance as was the obligation to provide and pay for the Chevelle automobile. Plaintiff did not have sufficient means to either provide a car for herself or pay any of the marital debts. Defendant's satisfaction of the automobile obligation merely provided plaintiff with a car and the ability to maintain her employment; it did not provide her the additional income necessary to pay the marital debts. Thus, we conclude, as did the court in *Huggins, supra,* that "the parties intended that the debt assumption give plaintiff added economic security by relieving her of those burdensome debts so that she could adequately support herself . . . ."[20]

The judgment of the trial court is affirmed.

OAKS and DURHAM, JJ., concur.

HOWE, Justice (dissenting):

I agree with the conclusion of the majority opinion that the trial court erred in holding that the defendant's discharge in bankruptcy bars his creditor (Mastercharge) from forcing payment of the obligation but that the discharge did not relieve him of his obligation to the plaintiff contained in the decree of divorce to pay the obligation and hold her harmless therefrom. It is fundamental that state courts are required to recognize and give validity to a discharge in bankruptcy ordered by a federal court.

---

**19.** *Id.* at 289–90, 437 P.2d at 212.

**20.** *Supra* n. 14, at 854.

However, I cannot agree that the debt in this case is non-dischargeable because it is "actually in the nature of alimony, maintenance, or support" as set forth in § 523(a)(5) of the bankruptcy code.

As a preliminary matter, I have grave doubts whether it was proper in the decree of divorce for the trial court to order the defendant to pay the debts and obligations (other than the car payment) since the parties had previously stipulated that the car payment would be the only debt which he would be required to pay. The majority opinion endeavors to justify the broad order to pay all the debts and obligations of the parties because the plaintiff had asked for that relief in her amended complaint. The majority asserts that the parties "agreed in the stipulation to have the case heard upon the amended complaint, as modified by the stipulation." I can find no such language in the stipulation and nothing which would indicate that the terms of the complaint were meant to prevail except where they were modified by the stipulation. I read the stipulation to be a complete agreement by the parties as to the relief to be awarded the plaintiff. The only reference to the amended complaint in the stipulation was that the plaintiff could obtain a divorce upon the grounds of mental cruelty as alleged in her amended complaint, subject to introducing sufficient evidence therefor. However, it appears that the amended complaint was to serve no other purpose since the parties stipulated to complete relief in their written stipulation which supplanted the relief sought in the amended complaint. The only reference in the stipulation to the debts of the parties is paragraph 2 which provides:

2. That Plaintiff shall be awarded the Chevelle automobile, subject to the Defendant paying the balance due and owing thereon; said monthly payment to be as and for *alimony* and said *alimony* shall cease upon payment by the Defendant of all of the payments due and owing to pay off the balance due on the Chevelle automobile. [Italics added.]

No reference was made in the stipulation to the other debts and obligations of the par-

ties, including the amount owing to Mastercharge. The defendant in no wise agreed to pay them. Therefore, it appears to me that the broad order contained in the decree of divorce that he "pay the debts and obligations incurred during the marriage of the parties hereto and hold the plaintiff harmless therefrom" was in contravention of the stipulation of the parties. However, since no appeal was taken from that decree and no motion has ever been brought to have that part of the decree set aside because it was in excess of the stipulation, I will assume that it is binding upon us for the purposes of this appeal.

The majority opinion affirms the order of the trial court finding the defendant in contempt of court for failing to pay the Mastercharge obligation. The majority does this upon its own finding of fact that the debt was "in the nature of alimony, maintenance, or support." The trial court made no such determination; and, since it is a factual matter upon which evidence would have to be taken, I think the majority is completely unwarranted in making that determination on this appeal. The trial court decided this matter of contempt solely as a question of law. He ruled that the discharge in bankruptcy barred the creditor from collection but that the discharge did not affect the decree of divorce ordering defendant to pay the obligation and to hold the plaintiff harmless. Since the majority agrees that his ruling as to the law cannot be sustained, this matter should be remanded to the trial court to take evidence and make findings of fact on whether the order to pay the Mastercharge debt was in fact an order for "alimony, maintenance, or support." The trial court did not reach that question.

The majority opinion, without the benefit of any evidence or any findings of fact by the trial court, makes the factual determination that the order to pay the Mastercharge debt was indeed in the nature of alimony, maintenance, or support. That determination cannot be made in that manner. The cases on the subject, *Lyon v. Lyon,* 115 Utah 466, 206 P.2d 148 (1949);

*Erickson v. Beardall,* 20 Utah 2d 287, 437 P.2d 210 (1968); *Nitz v. Nitz,* 568 F.2d 148 (10th Cir.1977); and *In re Huggins,* 12 B.R. 850 (Bkrtcy.D.Kan.1981), all of which are cited and relied upon in the majority opinion, require that before a debt can be declared to be non-dischargeable, it must be found that without the debt assumption by one spouse, the other spouse would be left with inadequate means of support. These cases do not sanction the making of that important factual determination from a reading of the complaint or decree as does the majority opinion. The majority actually recognizes that when it states "we look to substance rather than form." The determination hinges upon factual questions such as whether the non-paying spouse (usually the wife) is employed, the amount of her annual income, her expenses of support, her monthly obligations, etc. The determination will vary from case to case as is shown by a reading of the above four cases where different conclusions were derived. See footnote 15 of the majority opinion which sets out the *factual* test laid down in *In re Huggins,* supra, to be used in determining the nature of an assumed debt.

Moreover, if the question of whether the order that the defendant pay the Mastercharge balance was in the nature of "alimony, maintenance, or support" is a question to be determined from the face of the complaint, stipulation and decree without the benefit of any evidence, then it is manifestly clear that the parties intended that only the monthly payments on the balance owing on the Chevelle automobile should be alimony. Paragraph 2 of the stipulation quoted above is explicit that those payments and only those payments were regarded by the parties as alimony. Even a casual reading of that paragraph discloses that it was the intent of the parties to expressly limit alimony to the automobile payments, and when the automobile was paid for, alimony would cease. The defendant claims that when he entered into the stipulation he intended to file bankruptcy, and therefore obligated himself only to pay the balance owing on the automobile. He did not agree to pay any other debts. Since filing his bankruptcy, he has paid the balance owing on the automobile. The trial court and the majority opinion require him to pay the Mastercharge debt as alimony contrary to the explicit and express words of the stipulation.

I would remand this case to the trial court for a factual determination in accordance with the views expressed herein.

STEWART, J., concurs.