**In re Elvin Charles DEGRAFFENREID a/k/a Charles Degraffenreid, Debtor.**

**Janice HANKINS, formerly Degraffenreid, Plaintiff,**

**v.**

**Elvin Charles DEGRAFFENREID, a/k/a Charles Degraffenreid, Defendant.**

**Bankruptcy No. 87–01481.
Adv. No. 88–0020.**

United States Bankruptcy Court, E.D. Oklahoma.

Aug. 5, 1988.

Steven L. Parker, Tecumseh, Okl., for plaintiff.

D. Neal Martin, Shawnee, Okl., for defendant.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On June 24, 1988, this Court received for consideration Defendant's Motion for Summary Judgment and Brief in Support thereof in the above captioned adversary proceeding. Plaintiff's Brief Opposing the Motion for Summary Judgment was submitted and received on July 20, 1988.

After review of the Motions, the file and applicable law, we FIND:

## FINDINGS OF FACT

1. This matter is a "core" proceeding for purposes of 28 U.S.C. § 157(b). This Order is given in compliance with Bankruptcy Rule 7052. There is no genuine issue as to any material fact making disposition by summary judgment appropriate in accordance with Bankruptcy Rule 7056.

2. Charles Degraffenreid (Defendant) filed for Chapter 11 relief on December 30, 1987. Janice Degraffenreid (Plaintiff), Defendant's former spouse, filed a Proof of Claim listing three obligations arising from a Divorce Decree and subsequent property settlement totaling $243,849.

3. The parties were divorced in Pottawatomie County District Court on January 11, 1985 with a consensual Divorce Decree being filed on February 28, 1985. Subsequently, an Order Vacating Property Settlement of Divorce Decree and Entering New Property Division (Vacating Order) was entered into between the parties on January 10, 1986. This settlement dealt strictly with a reallocation of property between the parties and not with the divorce itself, as demonstrated by language throughout the Vacating Order.

4. Defendant received through this agreement much of the jointly acquired real property (including their family home and the majority of the Sonic properties) as well as stock in the Sonic Drive–In businesses and his separate property.

Plaintiff received her mother's house with house trailer, the Tecumseh rent house, the Tecumseh Sonic property, stock in the Tecumseh Sonic Drive–In, personal property and a provision for "alimony in lieu of property from Charles to Janice."

5. The "alimony in lieu of property" provision awards $140,000 to Plaintiff to be paid over ten (10) years in 120 equal payments with 10% fixed interest beginning February 5, 1986. The Note is secured by a Second Mortgage upon the family home. This is the source of Plaintiff's first claim of $148,600, including interest, which she

claims is support alimony and thus nondischargeable.

6. Plaintiff's Second Claim arises from a provision in the Vacating Order as to a "hold harmless" clause which states:

> *Business Liabilities.* Excepting those business liabilities related to the corporation or real estate associated with Sonic Drive–In, Tecumseh, Inc., upon closing Charles covenants and agrees to hold Janice harmless from any and all business related indebtedness incurred during the course of their marriage, including, but not limited to, lease agreements, franchise agreements, and note indebtednesses."

Plaintiff is presently obligated, due to her prior action of co-signing on a business obligation, to the FDIC in the amount of $91,749. Pursuant to this "hold harmless" clause, Plaintiff seeks this obligation deemed nondischargeable as to Defendant.

7. Plaintiff also claims $3,500 in attorney's fees stemming from the divorce action which she has reduced to judgment.

8. Plaintiff filed an Adversary Proceeding on April 8, 1988 for a determination by this Court as to the nondischargeability of these debts.

## CONCLUSIONS OF LAW

A. In accordance with 11 U.S.C. § 523(a)(5), a Chapter 11 debtor is unable to discharge obligations to a former spouse for alimony, maintenance or support owed to such spouse when such payments are "actually in the nature of alimony, maintenance or support." The ultimate determination of a divorce decree's award characterization, i.e., support alimony or property settlement, is governed by federal bankruptcy law rather than state law. *In re the Matter of Norman*, 3 Collier Bankr. Cas.2d (MB) 2d 497 (Bankr.D.N.J.1981). However, state law remains applicable in providing guidance to the Bankruptcy Court in enunciating the considerations used by the Trial Court. *In re Norman*, 4 Collier Bankr.Cas.2d (MB) 1573 (Bankr.W. D.Mo.1981). The Bankruptcy Court is not expected to be forced into deciding the characterization issue in a vacuum in the

absence of federal law concerning domestic relations. *Pauley v. Spong,* 661 F.2d 6 (2d Cir.1981). Since no Tenth Circuit position was presented to this Court, we chose to look elsewhere, in Oklahoma state law, for guidance.

B. The Divorce Decree and subsequent Order Vacating Property Settlement of Divorce Decree and Entering New Property Division was granted pursuant to Okla. Stat.Ann. tit. 12, § 1289 (West Supp.1988), which provides:

"(A) In a divorce decree which provides for periodic alimony payments, the Court shall plainly state, at the time of entering the original decree, the dollar amount of all or a portion of the payment which is a payment pertaining to a division of property. The Court shall specify in the decree that the payments pertaining to a division of property shall continue until completed . . .

(B) The Court shall also provide in the divorce decree that upon death or remarriage of the recipient, the payments for support, if not already accrued, shall terminate . . ."

The term "alimony in lieu of property," as used in the Vacating Order, is not addressed in this section or elsewhere in Oklahoma Statutes. However, the Oklahoma Courts have defined the term in stating that:

". . . there is a vital distinction between alimony for support and alimony in lieu of property division. Jointly-acquired property must be divided when a divorce is granted. A Court may divide the property in kind or set the same apart to one of the parties and require the other to pay such sum as may be just to effect a fair and just division . . . Indeed, unlike payments for support, payments pertaining to a division of property are dischargeable in bankruptcy and do not terminate on the death of either the husband or wife." *Isenhower v. Isenhower,* 666 P.2d 238, 240 (Okla.1983) citing numerous additional Oklahoma Supreme Court decisions.

■ It is clear in the Vacating Order that the purpose of the alimony in lieu of property clause was to convey an equitable division of property—a sum of cash in substitution for Defendant taking much of the jointly acquired real property.

Where the intent of the parties with respect to the designation of alimony as support or alimony in lieu of property division is unambiguously expressed in the property settlement agreement and consent decree, the Court is not free to look beyond the instrument to determine the parties' intent. *Batchelor v. Batchelor,* 585 P.2d 1120 (Okla.1978).

This Court determines that the document executed in this case (Vacating Order) clearly conveys the intent of the parties at the time of construction. Vacating Order is first and foremost a *consensual decree.* All parties had the opportunity to insert or delete specific language which would have automatically engaged certain conditions outlined in the Oklahoma Statutes. The entire document is dealing solely with property division alterations from the original Decree and is labeled as a "new property division." All language within the document is affecting only the property division and actually avoids the implication that the Order has any other effect by stating: "as to actually divorcing the parties hereto, together with issues pertaining to child custody, visitation and child support, said Decree should remain in full force and effect."

This Court cannot ignore the Order issued by the original Court of jurisdiction nor the language the parties chose to place within that Order. Since that language is clear and unambiguous as to its meaning, this Court relies on the document itself for determining the intent of the parties.

C. The nature of the payment can also be determined through an examination of various factors set out by other jurisdictions in attempting to resolve this issue. In the case of *In re Anderson,* 21 B.R. 335 (Bank.S.D.Calif.1982), five factors were outlined that this Court chooses to apply to the facts in the instant case:

1) The label given to the award by the state Court—in this case, as discussed above, the Vacating Order used express language which the Supreme Court of Oklahoma has stated indicates a property division;

2) The context of the disputed provision in the Decree—the only interpretation which can be derived from the context is that of property division, that being the sole issue addressed in the Vacating Order;

3) Whether the obligation terminates on the death or remarriage of the recipient spouse—no provision is made within the Vacating Order for these contingencies. This is further required by the Oklahoma Statutes to be deemed support alimony;

4) Whether the obligation terminates upon the death of the donor spouse— once again, no provision is made in the Vacating Order for this occurence, thus directing this Court toward finding a property division;

5) Whether the disputed payment to balance disparate incomes—it is clear from the Vacating Order that the purpose of this arrangement was to compensate the Plaintiff for the Defendant's receipt of a disproportionate share of the property of the estate, not a difference in incomes.

These factors only serve to reinforce the notion that property division was the sole intent of the Vacating Order. This Court chooses not to look to the Plaintiff's present need because to second guess the original State Court's determination and the agreement between the parties would impose its specialized view in an area in which it does not belong. *In re Anderson,* supra.

 D. As to Plaintiff's claim that the Defendant is required to assume the FDIC obligation incurred pursuant to the Vacating Order, once again, this turns on the issue of whether the obligation as described under "Business Liabilities" in the Vacating Order is a form of support alimony or a property division. *Fife v. Fife,* 265 P.2d 642 (Utah 1954); *In re Allen,* 4 B.R.

617 (Bankr.E.D.Tenn.1980). This "hold harmless" clause, like the provisions in the entire Vacating Order, is a property division. Obviously, the purpose of this clause was to assume liability on a business entity that the Defendant had assumed in the division. As such, the obligation is dischargeable by the Defendant.

 E. Plaintiff also seeks a determination that attorney's fees incurred by her during the divorce are likewise nondischargeable. The case of *In re Skinner,* 68 B.R. 45 (Bankr.W.D.Okla.1986) is not an aberration in declaring the attorney's fees dischargeable where they are not actually in the nature of alimony, maintenance or support as required by 11 U.S.C. § 523(a)(5). (See *In re Allen,* supra). In the instant case, the attorney's fees incurred by Plaintiff in the course of the divorce do not fall into this narrow classification and thus are dischargeable.

IT IS THEREFORE THE ORDER OF THIS COURT that the debts relating to the alimony in lieu of property, the FDIC obligation, and the debt related to attorney's fees incurred during the divorce are dischargeable as part of the property division, agreed between the parties, pursuant to 11 U.S.C. § 523(a)(5).

FURTHER, upon the foregoing, this Court denies the Plaintiff judgment as requested.